MILLER *v.* CASEY.

1. PARTNERSHIP—REAL PROPERTY—EVIDENCE.

Complainant's contention, in a suit for a partnership accounting, that his testator was an equal partner in farm property bought in defendant's name, on land contract, deceased paying nothing, and binding himself to no definite time of payment, obtaining no written evidence of the claimed half interest, *held*, not to be established by conflicting evidence.

2. SAME—PLEADING.

Under a bill filed for an accounting, charging the existence of a partnership arrangement in the ownership and operation of a farm, which theory the evidence did not sufficiently sustain, an accounting could not be ordered as to stock buying and selling in which the proofs showed that the parties had engaged together, since the relief granted must conform to the general theory of the pleadings.

3. SAME—EQUITY PLEADING—REMEDIES.

It is not enough that the proofs show that complainant is

entitled to some relief; for unless that is the relief warranted by the averments of his bill, complainant has failed to make out his case.

4. SAME—GENERAL PRAYER.

The general prayer for relief goes no further than to enlarge the special prayer for relief, as the case may warrant. The remedy awarded must always be consistent with the case made by the bill, not different from it.

Appeal from Calhoun; North, J. Submitted April 28, 1913. (Docket No. 89.) Decided July 9, 1913.

Bill by Allen Miller, executor of the estate of Henry W. Miller, deceased, against Garrett Casey for an accounting. From a decree for defendant, complainant appeals. Affirmed.

*J. M. Hatch & Sons,* for complainant.

*Winsor & Miller,* for defendant.

STEERE, C. J. In this suit complainant, as executor, filed on July 20, 1911, a bill for an accounting in behalf of the estate of Henry W. Miller, deceased, alleging that the defendant, Garrett Casey, with deceased, purchased and operated a farm in the county of Calhoun, State of Michigan, under a partnership agreement between them that the earnings from said farm should be applied on the purchase price, allowing 5 per cent. per annum as interest on the money advanced by defendant for such purchase; that, at such time as the earnings of the farm had paid the purchase price, Casey should deed an undivided half interest therein to deceased, and they should share equally in the uses and benefits, and increased value of said land. The place in question, consisting of 240 acres of land, is known as the "Duer Farm." It was purchased in 1902, paid for with money furnished by defendant, and deeded to him; he at that time having ready money in the bank available for that purpose.

Complainant claims that, in pursuance of their agreement of partnership, the farm was bought and stocked by the parties jointly, and that down to the time of testator's death, in November, 1909, said farm was run, managed, and controlled by the two in co-operation; that a prosperous business was done on the place, netting over $1,500 per year, and out of the earnings of said farm the interest on the purchase price of $6,000 has been received by defendant and $4,800 on the principal. It is further claimed that said farm has, since its purchase, nearly doubled in value, being at the time of the trial worth, at a low estimate, $10,000; that at the time of the death of deceased their partnership business was unsettled, since which time defendant, who has possession of the books of said firm, has neglected and refused to come to an accounting. Based on the alleged contract of partnership and the business conducted thereunder, complainant, as executor of deceased, claims to be entitled to one-half of the increased value of the farm and one-half of the earnings, less the balance yet owing defendant on the purchase price.

Defendant, by his answer, makes total denial of any partnership or any indebtedness to said estate on his part. The suit was heard in open court, and after argument of counsel the conclusion was reached by the court that complainant's contention had not been sustained by a preponderance of the evidence; that no partnership in the purchase of the farm, nor interest in its proceeds, was satisfactorily shown, and thereupon dismissed complainant's bill. From such decree complainant has appealed to this court after two motions for a rehearing, which were denied for the reason that the affidavits on which such motions were based were cumulative, in the main, and presented nothing new which would justify the court in granting the motions.

No written agreement or memorandum in writing of any kind is produced to establish this alleged joint ownership and interest of deceased in the title to real estate, admittedly purchased and paid for by, and deeded to, defendant. Both parties were mature business men of experience in real estate matters, farming and dealing in live stock. They were old associates and friends. Together with two other men named Stage and W. D. Miller, the latter a cousin of deceased, they had been engaged for several years in buying, selling, and shipping stock. The four were the principal stock buyers in that community, and were sometimes called the "Big Four." About 1898 or 1899 the four men started doing business together, and continued up to the time of deceased's last sickness. Of the nature of their relations W. D. Miller testifies:

"About 1898 or 1899 we started in business, the four of us, and continued up to the time of H. W. Miller's sickness. * * * We all had transactions wherein the Big Four had no interest. Wellie (deceased) and Casey were very intimate and worked together. Stage had a business of his own, and they had a business of their own, sometimes Stage & Casey together, and sometimes Stage and Casey separate. We didn't ask one another about it either, we just went and done it. * * * Of course, sometimes I would pay for it myself, and sometimes Stage, * * * and sometimes Wellie Miller, and sometimes they would not pay until it amounted to a few hundred dollars, and then charged interest for it. These matters were all settled up in a few days."

This testimony in its material parts is not disputed, and in a general way indicates a working arrangement between the four in which they harmoniously co-operated as cattle dealers. The cattle they bought and sold were shipped, as a rule, from Marshall, and stock not fit for market, or which they desired to hold

for any other reasons, was taken to some of their farms and fed for a time.

The testimony as a whole clearly indicates that Casey and deceased were very friendly and intimate, and more often associated in deals together than the others. They rented a farm for a time, and stock which they bought together was put upon it and kept for a greater or less length of time. The same course was followed with the Duer farm. Crops taken from another piece of land deceased owned were hauled to the Duer farm to feed their stock. They also bought feed elsewhere for that purpose. It is undisputed that during the more active period of their stock buying together deceased visited the farm at times, took stock there, and sold stock from there, bought feed for use there, and gave directions to employees on the farm in relation to the stock there.

When we come to the question of his having an interest in the farm itself the testimony is in emphatic conflict. That he could have had a half interest is conceded by defendant. They were interested together in the stock business when the farm was purchased. They talked it over. Defendant bought and paid for it, and it is his claim that at the time he bought it he offered a half interest to deceased if he would take it and pay for it, but that he did not do so, and made no claim to it during his lifetime; that their stock business was independent of the farm and farm purchase, except that their joint purchases of stock were at times taken to this farm, kept and fed, and sold or shipped from there, just as on other farms, owned individually or rented and used in their stock business.

Deceased had other and independent interests which also demanded his attention and means. He bought a livery stable in Marshall in 1903, the year after the purchase of the Duer farm. Complainant,

his brother, testified that he carried on quite an extensive business in that line for a time; that "he wanted me to brace up and quit drinking, and go in and take care of the barn;" but that he subsequently sold it at a loss. Deceased also drank to excess at times, and for about two years before he died was in poor health and not in condition to as well care for, or as actively engage in, business as formerly. Complainant testifies:

"He was sick a good deal of the time, and was at Mt. Clemens two or three times."

The friendship, interest in each other, and, to a greater or less extent, business relations continued between him and defendant until his death. During his last sickness, when confined to the house, complainant testifies:

"He thought a great deal of Casey; * * * I had a talk with Casey out on my porch the night before the will was drawn. Casey had been there to see my brother. I was talking with Casey, and I said, 'You come and see him just as often as you can, because he is satisfied—he is more satisfied when you are here than when the others are.' "

Defendant did so frequently, apparently taking an anxious and friendly interest in his condition, talking to others solicitously about him, and in response to an inquiry of the attending physician as to his pay said, "You go on, and if he don't pay you I will," which defendant afterwards did. As deceased's condition grew more serious his physician, at the suggestion of complainant and others, spoke to him of the advisability of adjusting his temporal affairs. In talking of them he stated that he wanted no lawyer, and said he and defendant could settle their own affairs. He finally made a will leaving his estate to complainant.

Before the will was drawn complainant asked de-

fendant as to his business relations with deceased and the condition of their joint interests, and they later had several interviews on the subject. Both testify as to the nature of these conversations, and their lengthy testimony is in direct conflict. Complainant testified that defendant admitted their partnership relations and deceased's interest in the farm, showing an account book marked "Duer Farm," on which was entered their various accounts. Defendant denies having or showing any such book, and produced a bank book containing certain entries which related to the farm, which he claimed was the one he showed complainant, and was the only book he had; denies admitting that deceased ever had an interest in the farm, and claims he explained at length their business relations, and showed they were practically all settled, and he owed deceased nothing.

Various witnesses testified to statements of deceased that he had an interest in the Duer farm, and others to his statements that he had not, and that he had never put a cent in it. Certain of complainant's witnesses testified to statements of defendant that he and deceased owned the farm together. Defendant denies making such statements, and claims that what he did say was that deceased was offered, and could have had, a half interest in it if he had so desired and paid for it; but that he never did take it, never paid a cent upon it, and made no claim to it during his lifetime.

Any detailed review of the lengthy, conflicting testimony of the numerous witnesses would serve no useful purpose. Taking it as a whole, we are impressed, as was the trial judge who heard and saw the witnesses, that it distinctly falls short of satisfactorily establishing a partnership in the purchase and business of conducting this farm, or any ownership or interest of deceased in said realty. The absence of any writing

upon the subject, while not controlling, is important.

It is true that a court of equity may hold real estate standing in the name of individual partners to be partnership property, where the acts, words, and conduct of the parties show it to have been treated as such, and that such was their thought and intent; but this must be convincingly established by clear, preponderating evidence. This farm was in no sense a contribution by defendant to make up his portion of the capital of the firm, as in *Johnson* v. *Hogan,* 158 Mich. 635 (123 N. W. 891, 37 L. R. A. [N. S.] 889). It was a distinct cash investment in real estate to the amount of $6,000; and the claim is made that, with nothing in writing, without a dollar paid, with no security given, and no definite time of payment agreed upon, and the payments contingent on the farm earning them, the court should find, from this conflicting testimony, that deceased became a partner in the purchase, and the owner of an undivided half of the land. We do not think the court is warranted in so finding.

Much of the testimony relied on by complainant to prove a partnership in the farm purchase is reconcilable with, and tends more strongly to establish, a copartnership in the business of buying and selling stock, extending over a term of years, involving many and varied transactions, and that their accounts were in a confused condition. Defendant himself testifies that he said to complainant:

"No, if you would settle with me square, you would not have a dollar, you would have to put up instead of drawing out, and I said, 'I want to settle this thing, it has been a long transaction between us, and there has never been head or tail to it;' * * * there was a lot of this work done from word to word— 'you do this and I will do that,' and nothing to show one way or the other; it was right and wrong with us. He and I knew what we agreed to, but nobody else did. * * * I explained to Miller, of course,

that it was a long, tangled-up mess, and there was a good deal of honor between us."

This, if properly pleaded, would seem to suggest a proper matter for accounting.

It is the contention of complainant's counsel that, in any event, a partnership in stock dealing is shown, and he is entitled, as a secondary relief, to an accounting as to such relations, under his general prayer for relief, even if the court fails to sustain the allegations of the bill as to the real estate partnership.

The bill is filed on the theory of a partnership in the ownership and operation of this farm, not a partnership in the business of buying and selling stock, and the accounting asked for is "in respect to said copartnership." It nowhere makes mention of any partnership relations, or business transactions, except in the farm venture. Stock dealing is not referred to or suggested in any way. So far as the pleadings warrant it, the court could as well order an accounting in relation to a partnership in the grocery or dry goods business. The bill concludes with the usual prayer "that your orator may have such further and other relief in the premises as shall be agreeable to equity and good conscience," but the "premises" distinctly and only allege, and relate wholly to, a partnership in the purchase and conduct of a farm.

In 16 Cyc. p. 485, it is said, citing numerous authorities:

"Furthermore, it is not enough that the proofs show that plaintiff (or complainant) is entitled to some relief; for unless that is the relief warranted by the allegations in the bill, plaintiff has failed to make out his case. And if plaintiff has framed his bill to adapt it to a certain theory on which he bases his right to recover, the proofs must be such as to warrant a decree in conformity to this theory; and it is not enough that the proofs are sufficient to justify a decree in conformity to some other theory."

A general prayer for relief goes no further than to enlarge, as the case may warrant, the special prayer for relief; but the relief granted must always be consistent with the case made by the bill, not different from it. *Hiern* v. *Mill,* 13 Vesey, 114; Daniell's Chancery Pleading & Practice, 380. This universal rule has always been recognized in this State. In Puterbaugh's Chancery Pleading & Practice (3d Ed.), p. 27, it is said:

"The court may, under the prayer for general relief, grant him such relief as he ought to have, consistent with the case made in the bill."

The secondary relief asked by complainant is not consistent with the case made in the bill, and for that reason beyond the power of the court to grant under the pleadings.

The decree of the trial court dismissing complainant's bill is therefore affirmed, with costs; but to be construed, of course, as without prejudice to any proceedings he may desire to institute relative to matters not alleged in the bill, though testimony may have been given in relation to some of them.

Decree affirmed.

MOORE, McALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.