## PUFFER *v.* CLARK.

1. APPEAL AND ERROR—EXTENSION OF TIME TO APPEAL—STATUTORY RIGHT.

Where an appeal is not perfected within the statutory period the right to appeal is lost and cannot be restored by the court; but the court has jurisdiction to extend the time in which to appeal if the parties move seasonably.

2. SAME—MOTION TO VACATE—PRACTICE—REVIEW.

The question as to whether sufficient showing was made to warrant extension of time in which to perfect an appeal is not open, on appeal, where the order by one of the Justices of the Supreme Court extending the time has not been vacated and no motion to vacate it has been made.

3. SAME—EXTENSION OF TIME TO APPEAL—STIPULATIONS.

Where a stipulation for extension of time in which to perfect an appeal is presented, the Supreme Court and the Justices thereof must rely upon the showing made, and must assume that it is signed by proper counsel; and the order extending the time will not be vacated because some solicitor who did not do so ought to have signed the stipulation, where it does not appear that the court was imposed upon or that some complaining interest has been harmed beyond that which a review of the proceedings may entail.

4. SAME—EQUITY—PLEADING—RELIEF NOT WITHIN SCOPE OF BILL.

Where trustees holding title to land granted for a specific purpose, upon condition that title should revert to the grantors or their heirs or assigns in case it ceased to be used for the purpose of the grant, filed a bill for the purpose of turning the control of said property over to another trustee, not inconsistent with the terms of the grant, and certain defendants, residuary heirs of one of the grantors, did not contest the relief asked for in the bill, they had a right to appeal from a decree annulling the condition of the grant; such relief not being within the scope of the bill.

5. SAME—PARTIES—RIGHT TO APPEAL.

The fact that appellants, after the filing of the original bill, executed quitclaim deeds of the property to the trustees does not of itself, the bill not having been amended, con-

clude them from appealing from a decree construing the original deed in such manner as to put an end to the condition therein.

6. SAME—PROCESS—SUBSTITUTED SERVICE—REHEARING—RIGHT TO APPEAL.
   Under section 12656, 3 Comp. Laws 1915, defendants brought in by publication, against whom a decree has been made, have a right to be admitted upon petition to defend, and may appeal from the denial of a rehearing.

7. SAME—MOTION TO DISMISS APPEAL.
   The motion to dismiss the appeals on the ground that appellants have no right to appeal must be denied where it appears that some of the appellants have the right to appeal.

8. EQUITY—DECREE—RELIEF NOT WITHIN SCOPE OF BILL.
   As to defendants against whom the bill was taken as confessed, the court was in error in granting relief not within its scope.

9. SAME—DECREE—PLEADING—RELIEF.
   Measured by the bill, the relief should have been limited to the substitution of trustees as prayed for, with the provision that the new trustee succeed to and take over all property pertaining to the trust and manage and control the same, and that it assume and perform all duties, obligations, and contracts in that behalf assumed by, devolving upon, or made by, the former trustee.

10. SAME—PLEADING—ISSUES—NOTICE—EXTENT OF RELIEF.
    If it is assumed that the answer and cross-bill of certain defendants attacked the validity of the original deed of the grantors and raised for decision the question of its scope and effect, and that all parties to the suit were bound to take notice of the issue sought by the answer and cross-bill to be raised, the decree annulling the condition in the deed was erroneous.

11. TRUSTS—CREATION OF TRUST—CONDITIONAL GRANT—REVERTER.
    Where property was conveyed to the Michigan Annual Conference of the Methodist Episcopal church upon the express condition that it should be forever maintained and used solely as a home for superannuated ministers of said Conference, their wives, widows, and such other needy and deserving persons as might from time to time be designated by the Conference, with a condition that if it

should cease to be used for said purpose it should revert to the grantors, their heirs or assigns, said conveyance did not create a trust, but contributed to a trust already settled.

12. REVERTER—POSSIBILITY OF REVERTER—ESTATES—INTEREST IN LANDS.

According to the best authority a possibility of reverter is not an estate, interest, or right in land, but a possibility of obtaining an estate in the future, and is therefore not devisable.

13. SAME—HEIRS—HOW DETERMINED.

As to whether the heirs at the time of the breach, or at the time of the grantor's death, take the right of reverter,— *quœre.*

14. DEEDS — CONDITION SUBSEQUENT — CHANGE IN TRUSTEES — BREACH.

To devolve the title and management of the property upon a new trustee will not breach the condition of the grant.

Appeal from Kent; Brown, J. Submitted June 28, 1917. (Docket No. 55.) Decided July 18, 1918.

Bill by William M. Puffer and others, trustees of the Michigan Annual Conference of the Methodist Episcopal church, against Emily J. Clark and others, and the trustees of the M. J. Clark Memorial Home, for the transfer of title to land from plaintiff trustees to defendant trustees. From a decree for plaintiffs, defendants except defendant trustees appeal. Reversed.

*Charles E. Ward,* for plaintiffs.

*Butterfield & Keeney,* for defendant appellants.

*Grant Sims* (*Sheridan F. Master,* of counsel), for defendant trustees.

For the administration of church affairs, the Methodist Episcopal church has conferences composed of all the ministers of the church resident in and performing functions as such ministers in particular districts. The Michigan conference is composed of the

ministers resident in and performing their functions in that part of Michigan west of the principal meridian, numbering some 350 members. It meets annually, and is presided over by one of the bishops or general superintendents of the church, who annually appoints the members to their charges. The particular conference has been in existence for more than 75 years.

Like other churches, the Methodist Episcopal church has considered and made some provision for the maintenance of ministers called sometimes superannuated, sometimes conference charges, and the widows of deceased ministers and their children, and in this conference a fund has been accumulated for the purpose of pensioning them. In the year 1885, the fund and various properties held for that purpose had become so considerable that it was thought best to organize a corporate body to hold, administer, and further accumulate funds and property for this purpose, and at the 50th session of the conference, in September, 1885, at Grand Rapids, a certificate of incorporation of trustees of the conference was made pursuant to action of the conference and section 4656 *et seq.* of Howell's Annotated Statutes (1st Ed. Vol. 1), the certificate being acknowledged and recorded in the office of the county clerk of Kent county September 29, 1885. By this action, the trustees named in this certificate and their successors in office became a body corporate by the name of the Trustees of the Michigan Annual Conference of the Methodist Episcopal church. The value of the particular fund has increased, and in the year 1914, exclusive of certain special property in special funds, amounted to more than $160,000, and superannuated preachers and their widows, numbering more than 150, received annually pensions from the income of the fund and the collections gathered in churches in the conference for that purpose and from other sources.

Bearing date August 23, 1915, acknowledged Au-

gust 24th of the same year, a deed was made by Melvin J. Clark and Emily J. Clark, his wife, of Grand Rapids, parties of the first part, and the Trustees of the Michigan Annual Conference aforesaid, of the second part, in and by which the parties of the first part, "for and in consideration of their desire to aid said parties of the second part in their work and of the sum of one dollar, to them in hand paid by the said parties of the second part," conveyed to the parties of the second part a parcel of land in the city of Grand Rapids, Michigan. Following the description of the real estate in the deed, is this language:

"The foregoing conveyance is made upon the express condition that the above described lands and premises shall be forever maintained and used solely as a home for superannuated ministers of the Michigan Annual Conference of the Methodist Episcopal church and their wives and the widows of deceased ministers and such other needy and deserving persons as such parties of the second part may from time to time designate, the same to be named and known as the M. J. Clark Memorial Home, and in case the said premises, or any part thereof shall by the acts, consent or neglect of the said parties of the second part or their successors in office, cease to be used and maintained for the purposes aforesaid, or be used for any purpose inconsistent therewith, then the title to the above described lands shall revert unto and vest in the said parties of the first part, their heirs or assigns, and all rights of the said parties of the second part or their successors in office or assigns, in and unto the above described lands shall absolutely cease and end."

This is followed by the habendum and the covenants of the deed. The property described in this deed was some time the homestead of the grantors and donors, consisting of about 20 acres of land. The deed was duly recorded September 14, 1905. An agent of the church was placed in the field to collect funds for the maintenance of the home and to secure a permanent endowment for it, and property and endowments, not

all of which is productive of income, have been contributed for its support and maintenance, valued, in real and personal property, at more than $83,000. Mr. Clark, during his lifetime, took a personal interest in the improvement of the property and expended therein considerable sums of money. Mrs. Clark has given $30,000 towards the erection of a home on the premises. A church building has been erected and several cottages. There were, originally, a large and substantial frame residence, and barns and other outbuildings. The real estate and buildings and improvements were regarded by the trustees in the year 1914 as worth from $75,000 to $100,000; aside from the superintendent's family, servants and nurses, there were 30 inmates or members of the home. From $600 to $1,200 a year is the annual contribution made by the various charges in said conference toward the support and maintenance of the home and the ministers and their widows who constitute the membership.

The administrative work connected with the business and management of the Clark property grew as the home grew. The conference determined that it was advisable and necessary that a separate board of trustees be created to administer this fund, and at the conference held at Battle Creek in September, 1913, the organization of a separate board of trustees for the said home, pursuant to Act No. 89, of the Public Acts of 1901 (3 Comp. Laws 1915, § 10904 *et seq.*), was authorized. This act provides that whenever a conference or other representative body of any religious denomination in this State,

"may desire to create a corporate board of trustees for any endowment fund or other property of the denomination represented by such body, it shall and may be lawful * * *. Thereafter such trustees and their successors in office shall be a body corporate and politic for the purposes in such statement specified" * * *

"SEC. 4. Such trustees may, in their corporate name, sue and be sued, and may take and hold in their corporate name all property, real and personal, devised, bequeathed, transferred or conveyed to them for the use and benefit of the religious denomination by whose representative body they are appointed. In the management and disposition of such property they shall be governed by the terms of the will, deed or other instrument by which such property shall be given to them, and subject to such terms, by the directions of the body by whom they were elected."

In section 5 is the provision:

"*Provided, however,* That the said trustees shall neither sell, convey, mortgage nor lease for a longer period than three years, any real estate held by them as such trustees, unless duly authorized to do so by the presbytery, synod, conference, diocesan convention, or other representative body which appointed them. And in every case of sale, conveyance or incumbrance of real estate, said trustees shall cause to be filed in the office of the register of deeds in the county in which such real estate is situated, a copy of the acts of said presbytery, synod, conference, diocesan convention, or other representative body authorizing such sale, conveyance or incumbrance, duly certified by the secretary of said representative body to be a true copy of said proceedings and the whole thereof." * * *

The certificate of incorporation was executed September 19, 1913, was filed in the office of the secretary of State on October 2, 1913, and the conference elected a board of nine trustees, members of the church residing within the territorial limits of the conference to serve as trustees of the M. J. Clark Memorial Home, and to hold, control and manage the present and future property and affairs thereof. The conference further directed that a bill in equity be filed in a proceeding "to be carried on amicably," to secure a decree of a court of competent jurisdiction permitting the trustees of the Michigan Annual Conference "to resign their trust as far as relates to the M. J. Clark

Memorial Home," permitting the new trustees to take over the property and assume the trust, declaring that the new corporation is regular and competent to assume it, providing that all notes and securities taken and contracts entered into by the old trustees be ratified and confirmed, the old trustees discharged, directing the transfer of title from the old to the new trustees, and such other and further relief of a general character as might be equitable and proper. Pursuant to this action of the conference, the bill in this cause was filed November 11, 1913. It is signed by William M. Puffer and others, trustees of the Michigan Annual Conference of the Methodist Episcopal church, by Swarthout & Master, their agents and solicitors. It is signed by Swarthout & Master, as solicitors for complainants and of counsel. It is verified by William M. Puffer. Exhibited with the bill is a copy of the deed hereinbefore referred to, of the resolution to which reference has been made, as well as a copy of the certificate of incorporation of the trustees of the M. J. Clark Memorial Home of the Michigan Annual Conference.

Melvin J. Clark died November 23, 1909, testate, and when the bill in this cause was filed Frank Jewell, one of the legatees, was acting as the sole executor and trustee of the estate. His will made no mention of the property in question, but certain persons were named in said will as residuary legatees of said estate. It is charged in the bill of complaint that should the property revert these persons would be the sole beneficiaries of such reversion. One of the residuary legatees died before the filing of the bill, and her heirs and legatees are made parties to the suit.

Some of the relief asked for is:

"8. And that said residuary legatees of the estate of said Melvin J. Clark be by said decree forever barred from asserting or claiming that such transfer from

complainants to said Trustees of the M. J. Clark Memorial Home real estate, covered by said deed, 'Exhibit A,' has worked a forfeiture or a reversion of the property therein described to them as such residuary legatees, or otherwise, or from claiming that said home property, or any part thereof, has vested in them by reason of such transfer.

"9. That said new corporation, to wit, the Trustees of the M. J. Clark Memorial Home, be appointed by the court as the trustees of all the property of every name and nature now belonging to or hereafter coming to or devolving upon said home, or complainants for the use and benefit of said home; and that all of the conditions, agreements and trusts mentioned in said deed, from said Melvin J. Clark and wife to complainants, be impressed upon the holding of said property by said new board of trustees; and that said new board of trustees be decreed to be subject to all of the conditions, trusts, obligations and requirements mentioned in said deed, or implied therein or thereby; and that said new board of trustees be decreed to be the grantee in said deed, subject to all of the trusts, conditions and requirements stated or implied in said deed."

Some of the numerous defendants were personally served with process, some were brought in by publication. As to some the bill of complaint was taken as confessed without appearance or answer. Seven of those made defendants filed an answer and claimed affirmative relief, charging that the trust attempted to be created in the original deed executed by Mr. Clark was void and that the title to the land did not pass to the trustees, plaintiffs, and that the property was owned by Mr. Clark until his death, when title thereto passed to these answering defendants and others by his will. It was set up, also, that because the deed is of record it is a cloud upon the title of defendants and tends to depreciate the value of their title and the sale of it, and they ask to have the said deed declared to be void and delivered up to be can-

celed. These defendants appear by P. H. Walsh, who signed the answer, filed January 23, 1914, as agent and solicitor for defendants. If, upon the filing of this answer and cross-bill, a subpœna was issued, it was not served upon the appellants, nor did they, or any of them, answer said cross-bill.

Such other proceedings were taken that certain infant defendants, viz.: Melvin J. Clark, Jr., Esther French and Geneva French, were represented by guardians, Esther L. Robinson being appointed guardian for the two Frenches, and the register of the court appointed guardian for Melvin J. Clark, Jr. The French minors by their guardian filed an answer, which is substantially a copy of the answer and cross-bill already referred to and is signed by P. H. Walsh as agent and solicitor, and the register of the court made the formal guardian's answer, submitting the infant's rights and interests to the protection of the court.

The trustees of the M. J. Clark Memorial Home answered the original bill (one of these is Emily J. Clark, widow of M. J. Clark), and they admit that the plaintiffs are entitled to the relief prayed for in their bill of complaint, the answer containing, among other things, the following:

"And these defendants here now go on record as being willing to accept the trust sought to be imposed upon them by the action of said annual conference; and sought to be confirmed in this proceeding; and agree to perform and carry out the trust imposed by said Clark deed according to its true intent and meaning;" etc.

They further answer:

"These defendants further say, on information and belief, that the terms and provisions in said deed were in accordance with the true purpose and intent of said Clark and wife in conveying said property; and that this was well known to all of his heirs. That since the

filing of said bill of complaint, and the cross-bill of the defendants, Sherman Robinson, Sarah A. Cole, Esther L. Robinson, James French, Otto French, Emily Heiss, and the separate cross-bill of the defendants Esther French and Geneva French, by their guardian *ad litem*, Esther L. Robinson, these defendants have asked all of the remaining eleven residuary legatees mentioned in said Clark's will, namely, Emily J. Clark, Marguerite S. Clark-Wurzburg, Edward Clark, Melvin J. Clark, Jr., Edith E. Clark-Sligh, Josephine Clark-Bowen, Gertrude L. Holcomb-Partridge, Irving M. Clark and Leland J. Clark, to give these defendants a quitclaim deed of the premises described in said deed from Melvin J. Clark and Emily J. Clark to the complainants. And these defendants say that all of said eleven other residuary legatees—with the wives of those male members of that class who are married— have executed quitclaim deeds to those defendants of said premises. And these defendants will produce the same in evidence on the trial of this case, and make reference to the same for greater certainty. They further say that the rights and interests of innocent parties have intervened since said property was taken over and has been under the control of the complainants, in reliance on said deed. And these defendants say that if the said court should hold that said deed was irregularly drawn—as claimed by said contesting defendants—that then this court should decree a reformation of said deed and a cancellation of said obnoxious clause. And these defendants ask that this be done accordingly.

"And these defendants will conform to, abide by and perform such decree in the premises as the court shall seem meet."

This answer is signed by the trustees, by Swarthout & Master, "their agents and solicitors," except as to Mr. Skillman, and by Grant Sims, solicitor and of counsel for defendants.

To the said cross-bill of Sherman Robinson and others, plaintiffs filed a demurrer and answer. Among others, grounds of demurrer stated are:

"VI. Because it appears that the purpose and ob-

ject of said bill of complaint is a transfer of trust imposed by said deed, and other trusts that have grown up as a result and by reason of said conveyance, from the complainants to the newly formed corporation known as the trustees of the M. J. Clark Memorial Home, and permitting said last mentioned body to assume said trusts, and confirming them in so doing, and to discharge the complainants from their responsibilities under said deed and in connection with said trusts, and to authorize complainants to make a conveyance accordingly, and that such conveyance be confirmed; and that the residuary legatees be barred by the decree of said court from questioning the regularity of said transfer of trusts. Whereas the matters suggested and the relief claimed in said cross-bill, and particularly in paragraphs VIII, X, and XI thereof, do not grow out of the original bill and are not contained in it, and therefore are not the subject of a cross-bill.

"VII. Because said cross-bill introduces other distinct matters from those involved in the original bill —matters which said answering defendants could not have maintained in an original bill for the same purpose. Said subject matter cannot therefore be introduced in this cross-bill.

"VIII. Because said cross-bill introduces other matters distinct from those involved in the original bill, and therefore becomes and is an original bill, as in a separate suit; it is therefore necessary that a subpœna should be issued and served on all of the parties to this suit, against whom any relief is sought.

"IX. It is stated in the cross-bill that the trust created by said deed is void because it is not fully expressed and clearly defined and the beneficiaries are too uncertain; and that said deed runs counter to the statute against perpetuities. Whereas it appears by said cross-bill that said deed was executed and delivered on or about August 23, 1905, and that complainants went into possession thereunder September 14, 1905, and have continued in possession thereunder since that date; and that said Melvin J. Clark died on or about November 23, 1909, leaving a last will and testament which did not refer at all to the property described in and conveyed by said deed. And where-

as, by Act No. 122, Public Acts of 1907, which law went into effect September 28, 1907, the legislature of the State of Michigan enacted that no gift to religious, charitable, or benevolent uses shall be invalid by reason of the indefiniteness or uncertainty as to the persons designated as the beneficiaries stated therein in the instrument creating the same, or by reason of the same contravening any statute or rule against perpetuities; and if a trustee is named in the instrument creating such gift, the legal title shall vest in such trustee. Said act applies to trusts created by a deed, under which the title had vested in said trustee prior to the adoption of said act, in cases where the grantor lived, as did M. J. Clark, for the space of more than two years after the said act became operative, and no suit or action had been commenced attacking the validity of said deed during the grantor's lifetime."

With reference to the original deed of the Clarks, it is said, and this is put out as a ground of demurrer:

"XXII. Because, by section 8828 and chapter 238 of the Compiled Laws of the State of Michigan [3 Comp. Laws 1915, § 11564, and chap. 221] said deed conveyed a title in fee simple to complainants, and said so-called reversionary clause in said deed, and the so-called trust clause in said deed are void and of no force and effect.

"XXIII. Because the clause in said deed seeking to qualify the use of said premises, and against alienating the same, and providing for a reversion of the premises if on account of the acts, consent, or neglect of the grantors the premises should cease to be used or maintained as such home, is a conditional clause merely nominal in scope, not favored by the law and valid under the law."

In answer to said cross-bill, they say, among other things:

"Complainants deny that said Clarks had no intention of conveying said property to complainants for their sole use and benefit; on the contrary these complainants aver that under the statute of the State of Michigan and the decision of our court, the legal in-

tent of said conveyance is to transfer to the complainants the title in fee simple to said premises, unencumbered by any reversionary clause or uncertain trust. And the said so-called trust clause in said deed is nothing more than a nominal condition, and is invalid, and does not modify the granting clause in said deed. They deny that said trust and deed have failed; and that therefore the estate attempted to be conveyed thereby must be regarded as belonging to the estate of Melvin J. Clark. On the contrary, they aver that the premises covered by said deed belong to complainants, and that the title thereof should be transferred by the decree of this court to said new corporation known as the Trustees of the M. J. Clark Memorial Home, as prayed in said bill."

This pleading is signed by the plaintiffs, by Swarthout & Master, their agents and solicitors. Upon the pleadings, to this point in the proceedings, no other counsel than those mentioned appear for any of the parties.

The cause came on for hearing in open court on the fourth day of September, 1914. A decree providing for a change of trustee, as prayed for, was made on the 14th, filed on the 17th, of September, 1914, containing, among other things, a provision:

"That all of the legal conditions, agreements and trusts mentioned in said Clark deed, be impressed upon the holding of said property by said new trustees; and that said new trustees be decreed to be subject to all of the legal conditions, trusts, obligations and requirements mentioned in said deed, or implied therein or thereby; and that said new board of trustees be decreed to be the grantee in said deed, subject to all of the legal trusts, conditions and requirements stated or implied in said deed. * * *

"It is further ordered, adjudged and decreed that the clause in said deed as follows: 'The foregoing conveyance is made upon the express condition that the above described lands and premises shall be forever maintained and used solely as a home for superannuated ministers of the Michigan Annual Conference of

the Methodist Episcopal church, and their wives, and the widows of deceased ministers, and such other needy and deserving persons as said parties of the second part may from time to time designate,' is a conditional clause relating to a grant directly in line with the general purposes contemplated by complainants' organization, and does not take away from the grantees in said deed, or their successors, the power of alienation; and that the trust sought to be created by the grantors in said deed is a charitable trust; and that such trust is fully expressed and clearly defined upon the face of the instrument creating it."

Nine defendants, of whom Emily J. Clark, the widow of Melvin J. Clark, was one, made a motion for rehearing November 11, 1914, and for leave to file an answer and cross-bill, and to introduce proofs on such terms as the court may impose. This petition is signed by Butterfield & Keeney, solicitors for petitioning defendants. It refers to those portions of the decree to which special attention has been called, says that the decree has not been entered nor any notice thereof been given to petitioners, that the decree is broader than and not warranted by the bill of complaint, was irregularly and improperly granted,

"and was a fraudulent attempt to deprive these petitioners of their rights under said deed, and that such decree should be set aside not only because no basis for such decree is laid in the previous proceedings in said bill of complaint, and no power existed in the court to make such decree, but because the same was fraudulently procured; that your petitioners immediately on learning of the fact caused application to be made to the attorney representing the defendant in the drawing of said decree, for a modification of the same, and for an alteration therein, so as to make the same conform to the prayer of the bill of complaint; that at first, as your petitioners are advised and believe, he agreed so to do, but that afterwards he refused to comply with the reasonable request of your petitioner in that regard; that the delay which occurred since the making of said decree has resulted

from negotiations between the parties to endeavor to induce them to recognize the rights of your petitioners, and that such negotiations were accompanied with the express agreement that nothing should be lost as to their right to appeal to this court by reason of such delay."

The plaintiffs answered the petition. Certain affidavits and correspondence were brought to the attention of the court. January 14, 1915, a petition for rehearing was filed by two other defendants, Butterfield & Keeney appearing as their solicitors. This was also answered by the plaintiffs. The court denied the petitions for rehearing. Time to appeal from the decree was extended from time to time, and time was also given to appeal from the order denying the petitions for rehearing. Under date September 4, 1915, a consent in writing was filed, signed by Swarthout & Master, that Charles E. Ward be substituted for them as solicitor for the plaintiffs. Upon the same paper and a part of it, is the following: "And I hereby appear accordingly. Chas. E. Ward." Finally, a stipulation, dated September 14, 1915, filed September 15, 1915, entitled in the cause, was made by Mr. Ward, Swarthout & Master, as solicitors for complainants, and Butterfield & Keeney, solicitors for defendants, upon which stipulation an order was made extending the time to perfect the appeal. It was followed by another stipulation to the same effect, and finally an application was made to a Justice of this court for an order extending the time within which to perfect an appeal, and an order was entered extending the time, the action of the said Justice being based upon a stipulation entitled in the cause, reading:

"It is hereby stipulated by and between the above-named parties through their respective solicitors, that the time to appeal from the final decree entered in the above entitled cause on the 17th day of September, 1914, shall be extended for six months from the 17th

day of September, 1915, and that the time to appeal
from the orders denying a rehearing made on the 23d
day of December, 1914, and on the 25th day of January, 1915, shall be extended for six months from the
23d day of December, 1915, and that an order may be
made and entered to that effect.

"This stipulation is based upon the fact that the
solicitors for the defendants have been prevented from
perfecting an appeal within the statutory period on
account of circumstances beyond their control.

"Dated January 8, 1916.

                    "CHAS. E. WARD,
                         "Solicitor for Complainants.
                    "BUTTERFIELD & KEENEY,
                         "Solicitors for Defendants."

Within the time so allowed, the appeals were perfected. A motion was made in this court by the
trustees of the M. J. Clark Memorial Home to dismiss
the appeals, which motion was set down to be argued
with the principal cause. It is said, and is true, that
appellants neither appeared nor were represented by
counsel at the hearing in the circuit court, and without seeking to set aside their defaults, and without
tendering an answer, they have appealed. It is pointed
out that of the appealing defendants one, Melvin J.
Clark, Jr., an infant, filed a guardian's answer, and
the others, Emily J. Clark, Marguerite S. Wurzburg,
Sara A. Clark, Frank Clark, Edith C. Sligh, Gertrude
S. Partridge, Irving M. Clark, Josephine Bowen, Leland J. Clark, have been defaulted, Partridge, Leland
J. and Irving M. Clark, after being brought in by
publication, and all of them have by quitclaim deed
conveyed whatever interest they had in the premises
to the trustees of the M. J. Clark Memorial Home. It
is said the final decree was made September 14, 1914,
and entered September 17, 1914; that unless the stipulation filed in the Supreme Court, signed by Mr. Ward
and Butterfield & Keeney, is considered a special motion and a proper showing sufficient to satisfy the

statute, the court is without jurisdiction in the premises. Section 20, chapter 50, judicature act (Act No. 314, Pub. Acts 1915 [3 Comp. Laws 1915, § 13755]). In this connection it is said the solicitor for the trustees of the M. J. Clark Memorial Home did not sign the stipulation presented to the Justice who extended the time for taking the appeal and that no notice of said application for extension of time was given to the solicitor for said trustees. It is said that section 496, 1 Comp. Laws (4 How. Stat. [2d Ed.] § 12014; 3 Comp. Laws 1915, § 12656), is not applicable except in cases where the bill shall have been filed for the satisfaction or payment of any sum of money, etc.

Counsel for the appellants say that pursuant to the order of this court the appeals were perfected and that the defendant trustees seek to dismiss the appeals without vacating, or seeking to vacate, the order.

Upon the merits, appellants say that the original bill plainly seeks, and the directions from the church conference authorized the plaintiffs only to seek, a shifting of the burden of the admitted trust to a new trustee, the deed of the property being treated as valid, the trust as existing and the reversionary provision in the deed as valid—at any rate, as not questioned. This being the purpose of the suit, and this purpose being agreeable to them, there was no occasion for them to appear or answer the bill, the facts charged therein being true and the relief sought therein being by them regarded as proper relief. They say further that when by the answer and cross-bill of certain defendants an attack was made upon the deed made by the Clarks of the property in question they were anxious and willing to in any proper way secure in the new trustees precisely the title and right which by the original deed was conveyed by the Clarks to plaintiffs, and, being advised that their quitclaim deeds would accomplish the purpose, executed them

with no idea or belief that by so doing the new trustees would take any other or different title or interest than plaintiffs had. They say that paragraphs XV and XVII of the decree, hereinbefore set out, to which they make objections, are not warranted by the bill or by any pleadings in the suit, and upon learning that the decree contained them they immediately protested, and they assert the right to appeal therefrom, although they neither appeared nor answered the bill of complaint.

The plaintiffs, answering the petition for a rehearing, appear by Swarthout & Master, who sign for them as their agents and solicitors, and as their solicitors sign the answer. The petition (paragraph 8) says:

"There was in said bill no prayer nor any suggestion whatever that it was the purpose of said suit to procure a decree of this court authorizing the defendants, or any party thereto, to sell or dispose of said property or to ask the court for any decree which would permit them to hold said property free from the condition of said deed."

To this, plaintiffs answer:

"Answering paragraph 8, complainants submit to the court the question of its legal meaning. They aver, however, that after said bill was filed and most of the defendants served with subpœna, certain of the defendants, representing 4/15ths interest of the residuum of said estate, appeared by counsel; and in their answer to said bill, averred that the paragraph contained in said deed, which is copied in paragraph 2 of said petition for rehearing, 'Was and is void and therefore the purpose of the transaction having failed, the title of the said lands did not pass to the said trustees but said property was owned by Melvin J. Clark until his death, November 23d, 1909, and passed to these defendants and the other heirs by his will.' They further alleged in said answer 'the truth to be that as the purpose of the trust was void, the deed was

void and therefore there was no reversion interest created.' They further averred in said answer 'that the trust created by said deed is void because it is not fully expressed and clearly defined and the beneficiaries are too uncertain and is against the statute against perpetuities.' Said answer was in the nature of a cross-bill; and it was alleged that inasmuch as said deed had been recorded it was 'a cloud upon the title of these defendants in said premises.' The complainants were required to make answer to said cross-bill; and the prayer of said cross-bill was that said deed may be set aside and declared void as against these defendants as a cloud upon their title and that the deed should be delivered up to be canceled. There also was a prayer for general relief."

The answer to the petition for rehearing contains, also, the following:

"XI. Complainants admit that said Butterfield, representing some of the petitioners, prepared and submitted to the new board of trustees of said Clark Home a form of declaration of trust, covering said premises. Said proposed declaration incorporated, *in haec verba*, the exact terms found in the original Clark deed and which caused the unfortunate litigation referred to in this answer; and also a clause that if said trust was not conducted according to such conditions, that then the property should revert, or that at least 11/15ths (the amount represented by petitioners) should revert to them. This document was received by the business committee (which had in charge said litigation), and given thorough and careful consideration. It was understood that this committee should make a report in writing on the subject to said board of trustees. And accordingly a full report was prepared, and signed by all of the members of the committee, and presented to a special meeting of said new board of trustees, held at Mrs. Clark's residence, and attended by the entire board. Mr. Butterfield, counsel for Mrs. Clark, was also in attendance. The said report is as follows:

"'GRAND RAPIDS, MICH., October 19, 1914.
"'To the Trustees of the M. J. Clark Memorial Home:
"'Your business committee respectfully report that they have

examined the attached declaration of trust prepared by Messrs. Butterfield & Keeney, attorneys for the M. J. Clark estate, which they ask our board to execute.

" 'While this committee is loth to refuse its assent to any request which the Clark heirs may make, yet in justice to the position we have maintained in conducting the chancery suit recently determined in the Kent circuit court in favor of the home and having in mind the ultimate good of the home, we have concluded that it is not advisable to execute this agreement; and for the following and other reasons:

#### " 'LEGAL REASONS.

" 'In the chancery case it was contended (and numerous Michigan precedents and cases from other jurisdictions were cited in support) that it was intended by the Clark deed to create a "charitable trust"—a trust not recognized in Michigan; and that our law made no distinction in favor of charitable trusts; and that a trust violating the statute against perpetuities and not specifically naming the beneficiaries was void; and the property reverted to the heirs of the grantors.

" 'Judge Brown in substance held that whether the Clark deed created a charitable trust, or the clause was considered a condition in the deed—the evidence in the case established that the contesting defendants are now estopped from attacking the deed.

" 'We are advised and we believe that the execution of this declaration of trust might open anew for future litigation practically all of the issues determined in the chancery suit— and free from the defense of estoppel. There are three minor heirs among the residuary legatees under the Clark will.

#### " 'BUSINESS REASONS.

" 'As a business proposition it is clearly inadvisable to tie up the power of alienation. The twenty acres is more ground than can be used for home purposes. Five, or, at most, ten acres is all that the home would be justified in keeping. The old people cannot use it for a park. The last five years has proven that the kind of people who will avail themselves of the privileges of this home cannot walk about the ground or use it as a park. Not more than a half dozen of the present thirty odd inmates are able to walk to the Clark church—which is only about 200 feet from the home building. To use the ground as a farm— located as it is in a rapidly growing quarter of our city—is foolish

and wasteful. A superintendent's time can be employed to better advantage than attempting to make a farm out of a few tillable acres.

·"'But, more to the purpose, we submit that the home with its present slender productive endowment (less than $25,000) cannot afford to keep (say) the south half of the premises, even as a gift. Already we hear the people thereabouts are asking that an east and west street be opened through the center of the grounds. We shall have to pay the expense. Other streets will have to come in time, as the piece of ground is as large as the space between Cherry and Wealthy, and Henry and Union streets. We have had to pay, or beg off, something like $2,000 of sewer taxes already. These will be coming all the time. Franklin street will soon be improved, as the street railway is about to build an extension on that street east to the lake. The street will have to be paved. Two blocks of pavement with the necessary cement walks will cost us several thousand dollars. There will be sewer and water main assessments accompanying this improvement. Similar expenses will attach to the improvement of the streets on the east and west side of the property, as well as all streets opened up within the property.

"'When your special committee, appointed a year ago last summer, took an inventory of the assets and liabilities of the home, so as to know whether a new board of trustees would be justified in assuming the trust of conducting the home, they found—and so reported to the joint boards on September 9, 1913 —that it would take $1,276 per year extra or additional income from what was then in sight, for the then succeeding six years simply to carry out the contracts for life support under which the board was then laboring. The condition is no better to-day, since the endowment has not been materially increased. We believe that it will take nearly, if not quite, an average of $1,000 per year for the next ten years simply to carry this south ten acres—with absolutely no return from it. And this in face of the fact that the general expenses of the home are constantly increasing.

"'In our judgment the home will be far better off ten, twenty, or fifty years hence without this land than it will be to have it saddled on our shoulders cinched with this reversionary clause.

"'It would be much better if the land were dedicated to the public for park purposes, and the city thus bound to stand the expense of upkeep and development.

" 'RECOMMENDATIONS.

" 'This committee therefore recommend:

" '(*a*) That the proposed declaration of trust be respectfully declined.

" '(*b*) That if the Clark heirs are not satisfied to allow matters to stand as they now are—the present board of trustees being under the control of the chancellor and subject to proceedings for contempt as well as personal liability if they should misappropriate any of these trust funds; the board being elected by and amenable to the Michigan Conference, and every trustee pledged to promote the best interests of the home—that then the trustees convey by quit claim to Mrs. M. J. Clark the entire twenty acres, and leave it to her to make such conveyance back as she may be advised, and as may be acceptable to the trustees, under a trust which will unquestionably have the protection of the statute of 1907.

" '(*c*) Or, in case neither of the foregoing recommendations is acceptable to Mrs. Clark and the other heirs, that then we convey to Mrs. Clark all the south ten acres absolutely—it being understood that it will be inadvisable for the trustees to have and hold the same and pay the attendant expense, with the reversionary clause tacked onto the tenure.

" 'We do not believe—as a straight matter of good business (horse) sense—this new board of trustees would be justified in the minds of our successors or by future generations, in doing otherwise.

" 'ELVIN SWARTHOUT,

" 'J. C. FLOYD,

" 'K. L. SKILLMAN,

" 'ANNA BISSELL'.

"A motion was made and seconded thereupon to adopt the report. After an extended discussion, occupying most of an afternoon, a substitute motion was made that the board execute the proposed declaration of trust. A vote was taken and stood three for the substitute motion to four against it, the president and one other member not voting. The president then asked that he might be recorded in favor of the substitute motion; and the motion was declared lost. The member who did not vote (Mr. Gulliford) then said he was not prepared to vote upon the subject and asked that its further consideration be postponed. Thereupon a motion was made to the effect that fur-

ther consideration of the matter be postponed, and this motion carried. The petitioners asked for a rehearing in this matter before any further or other meeting of said board had been called or held. In this connection, complainants are advised that by section 5 of Act No. 89 of the Public Acts of 1901—under which said new board of trustees is incorporated—the said trustees cannot sell, convey, mortgage or lease (for more than three years) any real estate held by them as such trustees unless they have been duly authorized to do so by the Michigan Annual Conference, and in case of sale, conveyance, or incumbrance said trustees must cause to be filed in the office of the register of deeds in the county where the land is situated, a copy of the acts of said conference authorizing such sale or conveyance or incumbrance duly certified by the secretary thereof to be a true copy of the said proceedings. Said conference will not again be in session until September, 1915. The complainants deny that the getting of said deeds was a fraud upon the petitioners; and aver that the giving of them was suggested by their own counsel; they deny that said deeds are without consideration; and they deny that they or any one for them made any false representation relative to the purport of said deed at any time."

It has been stated that the motion for rehearing was denied. It may be stated that to the approval of the bond on appeal plaintiffs objected:

"1. Because said defendants are not entitled to prosecute an appeal.

"2. Because said defendants neither answered nor appeared at any stage of the cause for the purpose of contesting any step taken against them; and to allow an appeal would be making the appellate court a court of original jurisdiction.

"3. Because the defaults of said defendants for their respective nonappearances in said cause have not been opened up or set aside.

"4. Because no answer, showing a meritorious defense, nor any defense whatever, has been tendered or filed by the said defendants.

"5. Because the record in said cause discloses that none of the said defendants has any interest in the subject matter of said suit; that while they may have been interested at the commencement thereof, such interest, if any, has determined, that in and by the quitclaim deeds in evidence herein, said defendants, after the commencement of the action, and prior to the filing of the motion, assigned and alienated any and all interest they may at any time theretofore have had in and to the subject-matter of said suit."

In this court, there is a brief for the appellants, signed by Butterfield & Keeney, one for the trustees of the M. J. Clark Memorial Home, signed by Grant Sims and Sheridan F. Master, and one for the plaintiffs, consisting of the following:

"In this cause I have been advised by my clients that they do not desire me to contest in this court the position taken by Emily J. Clark and her associate appellants. For that reason I have filed no brief in this cause in this court.

(Signed) "CHAS. E. WARD,
"Solicitor for Complainants."

OSTRANDER, C. J. (after stating the facts). Passing the question of the right of the trustees of the M. J. Clark Memorial Home to contest the granting of relief to the appealing defendants, I consider whether it is true, as is claimed, that this court is without jurisdiction to hear and determine the appeals because they were made too late. We have held that parties—at least when not prevented from appealing by the action or non-action of officers of the court—must perfect appeals within the time limited in the statute, see *Perkins* v. *Perkins*, 173 Mich. 690, and cases cited in the opinion, and that, failing to do this, the right to appeal is lost and cannot be restored by the court. These appellants moved, seasonably, for an extension of time for perfecting the appeals, and, within the statute period, the time was extended. It is clear there was

*jurisdiction* to do this. Whether the showing which was made was sufficient is another question, not open upon this record, since the order extending the time has not been vacated and no motion to vacate it has been made. And if the question was open, then, considering the objections and the showing which is made, I am of opinion that the Justice who granted the extension of time did so upon a proper showing. It is true that only the solicitors for plaintiffs and the solicitors for appealing defendants signed the stipulation which was the basis for the order, but the failure to secure signatures of solicitors for other defendants is explained. Mr. Walsh, who appeared as solicitor for certain defendants, is not objecting. Repeated extensions of time were secured from the circuit court upon stipulations signed by Mr. Ward and Swarthout & Master and Butterfield & Keeney. That these defendants proposed to appeal was apparently known to every one interested, and no claim is made that the case on appeal was not properly settled. This court and the Justices thereof must rely in such a matter upon the showing made and must assume, when a stipulation is presented, that it is signed by proper counsel. If it turns out after the appeal is perfected, and after the time to perfect it has expired, that technically, some solicitor who did not do so ought to have signed the stipulation presented with the application for an extension, the order extending the time will not for such a reason be vacated by the action of the court in a case where it does not appear that the court was imposed upon or that some complaining interest has been harmed beyond the harm which a review of the proceedings may entail. It may be assumed, upon this record, that all solicitors of all parties would have joined in the stipulation if they had been requested to do so. It must be held that the appeals were seasonably taken.

It is said that appellants have no right to appeal. Considering only the right to appeal from the decree, and not what may be gained thereby, I am of opinion that the right exists as to all appellants, if for no other reason than the one that the decree is not supported by the bill of complaint and the relief granted is greater than and different from that prayed for in the bill. There was no reason why appellants should contest the matters set up in the bill of complaint or contest the granting of the relief prayed for therein. There was on their part no objection to the substitution of a new trustee for the old one. See *Covell* v. *Cole,* 16 Mich. 223; *McMahon* v. *Rooney,* 93 Mich. 390; *Miller* v. *Casey,* 176 Mich. 221; *Reynolds* v. *Stockton,* 140 U. S. 254; *Masterson* v. *Howard,* 18 Wall. (U. S.) 99; *Northern Trust Co.* v. *Albert Lea College,* 68 Minn. 112; *Monarch Brewing Co.* v. *Wolford,* 179 Ill. 252.

But, it is said, each of the appealing defendants, since the suit was begun, has executed and delivered to the trustees of the M. J. Clark Memorial Home a quitclaim deed of the Clark property and has thereby divested himself of all interest in the property. Although the execution and delivery of the quitclaim deeds are admitted, their force and effect are disputed. The bill was not amended by setting out the deeds, and no relief was prayed for based upon them. *Kelly* v. *Kelly,* 54 Mich. 30. Appellants say the fact is that the quitclaim deeds were executed upon their part to establish, so far as was possible, the validity of a trust attacked by some of the defendants—to release any claim the appellants might have in the property by reason of the invalidity of the claimed trust established by the original deed. It now appears that the trustees of the M. J. Clark Memorial Home are not of one mind about seeking *any* advantage from the quitclaim deeds. Moreover, if the court considered

the effect of these deeds to be the putting an end to the so-called trust instead of validating it, the decree makes no mention of them. It does, however, construe the original deed in such manner as to put an end to the condition in the deed. It must be borne in mind, too, that the deed made by Melvin J. Clark, Jr., an infant, who appeals, is at least voidable. It follows, I think, that the admitted fact that the deeds were executed and delivered does not of itself conclude the right of one who made a deed to appeal from the decree.

As to the appeal from the denial of a rehearing, three appellants, namely, Irving M. Clark, Leland J. Clark, and Gertrude C. Partridge, are nonresidents, brought in by publication. As to them, the statute gives the right to be admitted upon petition to defend. See *McDonald* v. *McDonald*, 45 Mich. 44; *Coffin* v. *Ontonagon Circuit Judge*, 140 Mich. 420.

It must be held that some of the appellants have the right to appeal from the order denying the rehearing, and the motion to dismiss the appeals must be denied.

The court, as to defendants against whom the bill was taken as confessed, was in error in granting relief not within the scope of the bill. Measured by the bill, the relief should have been limited to the substitution of trustees as prayed for, with the provision that the new trustee succeed to and take over all property pertaining to the M. J. Clark Memorial Home, including all endowment and other funds, and manage and control the same, and that it assume and perform all duties, obligations and contracts in that behalf assumed by, devolving upon, or made by, the former trustee. The statute under which the proposed new trustee was created itself supplies further directions.

If it is assumed that the answer and cross-bill of certain defendants raised for decision the question of

the scope and effect of the original deed of the Clarks to plaintiffs—if it is assumed that the validity of the deed is attacked and that all parties to the suit were bound to take notice of the issue sought by the answer and cross-bill to be raised, the decree is still erroneous. In this behalf, counsel for appellees, the trustees of the M. J. Clark Memorial Home, say that if compelled to go to a hearing upon the merits they desire that further testimony be taken and they suggest that it be taken orally in this court. By "a hearing upon the merits" is meant, evidently, one in which the appellants seek to show that notwithstanding the execution of the quitclaim deeds the decree is erroneous.

Some one representing plaintiffs procured the execution and delivery to the proposed new trustee of quitclaim deeds of the Clark property, made by eleven of fifteen of the residuary legatees of Mr. Clark. There has been no determination of heirship. It is proposed to be proven in "a hearing upon the merits" that in September, 1913, the plaintiffs executed a quitclaim deed to the same grantee of the same property. It is insisted that in this way an interest in said real estate was created in the grantee in said deeds supporting the conclusion that the estate—the property—is alienable, in whole or in part. This I understand to mean that the condition in the deed has been released, or conveyed. Upon the other hand, appellants contend that the purpose in giving the quitclaim deeds was not to release the provision for reverter and that the quitclaim deeds do not, in law, release or assign the condition in the original deed. If the purpose or intention of the grantors in executing the quitclaim deeds in any manner controls the determination of this question, further testimony might be required. So, also, if the claimed benefit of the quitclaim deeds cannot be given or clearly denied upon the record as

made, there should be a further hearing with a right to amend the bill. If the intention of the grantors is immaterial, there is no occasion for taking further proofs.

It will be observed that in the decree it is said that the condition in the deed—

"is a conditional clause relating to a grant directly in line with the general purposes contemplated by complainants' organization, and does not take away from the grantees in said deed, or their successors, the power of alienation; and that the trust sought to be created by the grantors in said deed is a charitable trust; and that such trust is fully expressed and clearly defined upon the face of the instrument creating it."

Following this is the judgment that the defendants —plaintiffs in the cross-bill—be denied relief.

For any purpose here material, there is no reason for saying that the deed executed by the Clarks created a trust. The conference has, and had, a trust fund, the charitable purpose of which is clear. The committee of the conference was trustee and the beneficiaries were the superannuated ministers and widows and children of deceased ministers. The people who contributed to this fund did not each of them create a trust, nor were they each of them, in any proper sense of the term, settlors of a trust. Their gifts augmented a specific trust fund. So the Clarks, knowing of this charitable trust, solicited by an agent of the trustee, and desiring "to aid said parties of the second part in their work," contributed to a trust already settled, with beneficiaries already designated, property to be used in a certain way, the gift being, as the trial court says, "a grant directly in line with the general purpose contemplated by complainants' organization." This does not deny that the property was thereafter and now is held in trust by the plaintiffs or by the substituted trustee. They conveyed,

however, a conditional or qualified fee, absolute until the condition is broken, and if broken the heirs of the grantor take by right of reverter. There is a possibility of reverter which denotes no estate,—

" 'but as the name implies only the possibility to have the estate at a future time. Of such possibilities there are several kinds of which two are usually denominated by the term now under consideration: (1) The possibility that a common law fee may return to the grantor by breach of a condition subject to which it was granted; and (2) the possibility that a common law fee other than a fee simple may revert to the grantor by the natural termination of the fee.' The possibility of reversion expectant on such an estate is left in the person who limits it and 'in the meantime the whole estate is in the grantee or owner subject only to this possibility of reverter in the grantor. The grantee has an estate which may continue forever though there is a contingency which when it happens will determine the estate. This contingency cannot with propriety be called a condition. It is a part of the limitation and the estate may be termed a fee.' " *Pond* v. *Douglass*, 106 Me. 85, 89.

See, also, *North* v. *Graham*, 235 Ill. 178; *First Universalist Society* v. *Boland*, 155 Mass. 171; *Estes* v. *Muskegon County, etc., Park Ass'n*, 181 Mich. 71; *Delhi School Dist.* v. *Everett*, 52 Mich. 314. Examine *Blanchard* v. *Railroad Co.*, 31 Mich. 43; *Thayer* v. *McGee*, 20 Mich. 195. According to what seems the better reasoning, a possibility of reverter is not devisable, but passes to those who are heirs of the grantor at the time of the breach. It is not an estate, interest, or right in land, but a possibility of obtaining an estate in the future, and is therefore not devisable. It passes by right of representation and not by descent to the heirs at the time of the breach. *Methodist Protestant Church* v. *Young*, 130 N. C. 8; *Upington* v. *Corrigan*, 151 N. Y. 143. To the contrary is *North* v. *Graham*, *supra*, holding, upon the

Illinois statute, that the heirs at the time of the grantor's death take the right of reverter. See the note to *North* v. *Graham*, 18 L. R. A. (N. S.) 624. It is inadvisable to determine the precise point now. There has been no breach of the condition by the grantee in the Clark deed. To devolve the title and management upon a new trustee will not breach the condition. It does not appear that there has been a release of it, or that the condition is not in force; and if it is in force, the decree adjudging the substituted grantee, or the conference, to have the right of alienation is erroneous. There is no testimony tending to prove that the conference, or the plaintiffs, desire to avoid any responsibility or to refuse or repudiate the grant as it was made. Nor is it proper that the court shall now advise them of the consequences if hereafter they shall deem it inadvisable to hold the property according to the terms of the grant.

The quitclaim deeds are in existence. The title to the land and the record thereof ought not to be clouded by them or doubt thrown upon the relation of the conference and the trustee to the property. Their force and effect are not considered except as herein expressly indicated.

The decree below is reversed, and one will be entered in this court in accordance with the prayer of the bill.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.