PRESIDENT AND FELLOWS OF HARVARD COLLEGE v. JEWETT et al. FASSE et al. v. PRESIDENT AND FELLOWS OF HARVARD COLLEGE et al. JEWETT v. SAME.

(Circuit Court of Appeals, Sixth Circuit.
May 16, 1925.)

Nos. 4119, 4135, 4140.

1. Wills ⬅️➡️436.

An Ohio will must be construed in accordance with the statutes and decisions of that state in reference to wills.

2. Wills ⬅️➡️439.

In the construction of wills, the intent of testator, when not in violation of statute or public policy, must control.

3. Wills ⬅️➡️440.

Intent of testator must be ascertained from will itself having recourse to collateral aids only where intent is doubtful.

4. Wills ⬅️➡️456.

Language, unambiguous and not in conflict with any other part of will, must be given usual and ordinary meaning.

5. Charities ⬅️➡️29—Title to lands devised to museum for scientific purposes, and preservation of remains and relics thereon, reverts on removal of relics which completed trust.

Where will devised to museum all of estate in land, to be held in trust in perpetuity for scientific purposes and preservation of remains and relics thereon, removal of relics from the land completed trust, and title reverted.

6. Charities ⬅️➡️30—Partition suit held not to affect title to lands devised for scientific purposes and preservation of relics thereon.

Where lands were devised to museum for scientific purposes and preservation of remains and relics thereon, partition suit setting aside land in no way changed or affected the title.

7. Charities ⬅️➡️39.

If corporation by merger with another took any title to lands devised to latter for museum, it took no better title than latter had.

8. Charities ⬅️➡️35—Intent of testatrix that relics were to be preserved on land devised for scientific purposes and preservation of relics must control.

Where language of devise indicated intent that lands, devised to museum for scientific purposes and preservation of relics thereon was for purpose of preserving relics on land itself, such intent of testatrix must control.

9. Wills ⬅️➡️456—Testatrix may not be deprived of right to make will by construction at variance with ordinary meaning of words used.

The court may not deprive testatrix of right to make will, by construction, wholly at variance with plain import and usual and ordinary meaning of words used.

10. Charities ⬅️➡️37—Cy pres doctrine can only be invoked in furtherance of intent of donor, and not in disregard of express terms of grant or devise.

Cy pres doctrine can only be invoked in furtherance of intent and purpose of donor of trust as near as may be, and not in disregard of express terms of grant or devise.

11. Charities ⬅️➡️37—Removal of relics from land, devised for scientific purposes, and preservation of relics thereon, making its use for purpose of trust impracticable, presents no case for cy pres doctrine to impress land with trust for maintenance of relics.

Where land was devised to museum for scientific purposes and for preservation of relics, removal of relics from land made further use for purpose of trust unnecessary and impracticable, presenting no case for application of cy pres doctrine, so as to impress land with trust for maintenance of relics.

12. Wills ⬅️➡️669.

Sufficiency of testatrix's reasons for creating trust on terms and conditions named cannot be questioned by courts.

13. Charities ⬅️➡️30—Testatrix, on devise to museum for scientific purposes and preservation of relics thereon, reserving no interest, would have at most a mere possibility of reverter (Gen. Code, Ohio, § 10580).

Under Gen. Code, Ohio, § 10580, where testatrix, on devise of land to museum for scientific purposes and preservation of relics thereon, reserved to herself no right of interest that could pass under residuary devise, she at most would have mere possibility of reverter therein.

**14. Common law ⟨key⟩14—Common law can neither add to nor take from statutory rule, where Legislature has assumed to establish either rules of property or conduct.**

Wherever Legislature, by statutory law, assumed to establish either rules of property or conduct, the common law can neither add to nor take from the statutory rule.

**15. Descent and distribution ⟨key⟩43—Lineal heirs of deceased heir take by representation and not as direct heirs, where descent is arrested in heir of equal consanguinity to intestate as deceased ancestor.**

Statutes of Ohio recognize right to take by representation, only that lineal heirs of deceased heir take by representation and not as direct heirs of intestate, where descent is arrested in heir of equal consanguinity to intestate as their deceased ancestor, and they take per stirpes and not per capita.

**16. Descent and distribution ⟨key⟩43—Title to land devised, with possibility of reverter, on reversion vested in heirs as representatives of deceased, who, being of equal consanguinity, take per capita and not per stirpes (Gen. Code, Ohio, § 8581).**

Under Gen. Code, Ohio, § 8581, when devise with possibility of reverter was enlarged into estate of inheritance by reversion on determination of trust estate, title vested in deceased's then heirs as her representatives, and not as representatives of heirs living at time of her death, and, being of equal consanguinity, they take per capita and not per stirpes.

Appeals from the District Court of the United States for the Southern District of Ohio; Smith Hickenlooper, Judge.

Bill by the President and Fellows of Harvard College against John B. Jewett and others. From the decree, complainants appeal, Charles E. Jewett cross-appeals, and Phebe Mathis Fasse and certain others, all heirs of Ida Mathis originally a party, also cross-appeal. Affirmed.

This appeal and cross-appeals involve the construction of items 4 and 14 of the will of Phebe Ferris, who was at the time of her death a resident of the state of Ohio. These items read as follows:

Item 4: "I give and devise to the Peabody Museum of American Archeology and Ethnology of Cambridge, Mass., the lot set off to Joseph Ferris in partition of the dower tract, being the east end of said tract and containing what is known as the Ancient Cemetery, to be by said Museum kept for scientific purposes for the preservation of the remains and relics of said cemetery."

Item 14. "All the rest and residue of my estate whether the same be real, personal or mixed, and wheresoever situate, I give, devise and bequeath unto my said grandnephews John B. Jewett, William Frederick Jewett, Percy L. Jewett, Arthur Jewett and Charles E. Jewett, and the said Ida Mathis, share and share alike."

Prior to the death of Phebe Ferris, and at the time her will was probated, the Peabody Museum of American Archeology and Ethnology of Cambridge, Mass., was a corporation organized under the laws of that state. Since that time it has been consolidated with and merged into the President and Fellows of Harvard College, a corporation organized under the laws of Massachusetts. Subsequent to the death of Phebe Ferris, a partition suit was brought in the common pleas court of Hamilton county, in which suit the land devised to the Peabody Museum was surveyed, and the sheriff, in pursuance of an order of court, executed a deed to the Peabody Museum in which this land was described by the definite boundary lines fixed and established by the survey.

The Ancient Cemetery, to which reference is made in item 4, was a burying ground of an ancient Indian tribe that had inhabited this part of Ohio. Prior to the death of Phebe Ferris, 698 skeletons and a large number of artifacts of this Indian tribe had been exhumed from this cemetery. Many of these were sent to the Peabody Museum. After the death of Phebe Ferris, the Peabody Museum accepted the devise, entered into the possession of this property, conducted research work thereon, and exhumed therefrom 487 Indian skeletons and a great number of artifacts, which have been removed to its Museum at Cambridge, Mass., and catalogued. At the time the bill of complaint was filed in this case there had been removed from this cemetery all the relics and remains thereon and therein that are worth removing. The appellant, the President and Fellows of Harvard College claiming title to this land by reason of its consolidation and merger with the Peabody Museum, filed its bill of complaint, making all the heirs and residuary legatees of Phebe Ferris defendants, and praying that the court quiet its title to the land as owner in fee simple, or that the court find the complainant holds the title in trust, the purposes of which trust can be better accomplished by selling the land and directing that the proceeds thereof constitute a fund for maintaining these relics and remains for scientific purposes in the museum maintained by it as a branch of its college. Separate answers were filed by the heirs and the residuary legatees, denying that the complainant acquired any right, title, or interest in this land by reason of its consolidation and merger with the Peabody Museum and aver-

ring that the Peabody Museum took, under the provisions of item 4, a perpetual trust to keep and maintain these remains and relics upon the property so devised; that the removal of the same was a violation of the trust and defeated its purposes; that this property is no longer subject to the trust, and neither the complainant nor the Peabody Museum has any further interest, right, or title therein.

At the time of the death of Phebe Ferris, she left surviving her a nephew, John F. Jewett, and John B. Jewett, William F. Jewett, and Madge R. Robbins, children of Eri F. Jewett, who was also a nephew of the testatrix.[1] John F. Jewett has since died, leaving Louisa E. Jewett, his widow, and Charles E. Jewett, his only child.

The beneficiaries named in the residuary clause of the will are John B. Jewett, William Frederick Jewett, Percy L. Jewett, Arthur Jewett, Charles E. Jewett, and Ida Mathis. Ida Mathis was not related to the testatrix, and since the beginning of this action she has died, and her heirs have been made parties to this action. Louisa E. Jewett, widow of John F. Jewett, claims the entire interest in the reversion to the estate of Phebe Ferris as sole legatee of the estate of John F. Jewett, and under a quitclaim deed from Eri F. Jewett. Charles E. Jewett claims title to one-half interest in the reversion as the only child and heir at law of John F. Jewett, deceased. John B. Jewett, William Frederick Jewett, and Madge R. Robbins, children of Eri F. Jewett, each claim a one-fourth interest.

Upon the issue so joined, the trial court found that the Peabody Museum was devised an estate in fee simple, burdened with a continuing trust in the nature of a public charity; that the specific purposes of the trust have been fully accomplished, the trust terminated, and the title therein reverted to the heirs at law of the testatrix then living, per capita and not per stripes.

From this decree the President and Fellows of Harvard College took an appeal. Charles E. Jewett, and the heirs of Ida S. Mathis, filed cross-appeals.

Edward Colston, of Cincinnati, Ohio, for President and Fellows of Harvard College.

Lester A. Jaffe, of Cincinnati, Ohio, for Charles E. Jewett.

Oliver B. Jones, of Cincinnati, Ohio, for Fasse and others.

Guy W. Mallon, of Cincinnati, Ohio, for John B. Jewett and others.

Before DENISON, DONAHUE, and KNAPPEN, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1-3] This is an Ohio will, and must be construed in accordance with the statutes and the decisions of the court of last resort of that state in reference to wills. Section 10580, General Code of Ohio, provides that every will shall be construed to convey all the estate of the devisor in lands, tenement, and hereditament which he could lawfully devise unless it shall clearly appear by the will that the devisor intended a lesser estate. It is also a settled rule in Ohio that every one who makes a will is presumed not to have intended to die intestate as to any of his property. In the construction of wills, the intent of the testator, when not in violation of a statute or public policy, must control. When possible, this intent must be ascertained from the will itself. It is only where that intent is doubtful or uncertain that recourse may be had to collateral aids to a clear interpretation. Linton v. Laycock, 33 Ohio St. 128; Black v. Hill, 32 Ohio St. 313; Worman v. Teagarden, 2 Ohio St. 380.

[4] The language of item 4 is plain, clear, and unambiguous. It is not in conflict with, or repugnant to, any other part or provision of the will. These words must be given their plain, usual, and ordinary meaning. Black v. Hill, supra; Robbins v. Smith, 73 N. E. 1051, 72 Ohio St. 1, affirming 5 Ohio Cir. Ct. Rep. (N. S.) 545; Painter v. Painter, 18 Ohio St. 247.

It clearly appears from the plain and unmistakable language of item 4 that Phebe Ferris intended to devise and did devise to the Peabody Museum all the estate in the lands described therein that she could lawfully devise, to be kept and held in trust by that corporation in perpetuity "for scientific purposes for the preservation of the remains and relics of said cemetery." Hopkins v. Grimshaw, 17 S. Ct. 401, 165 U. S. 342, 357, 41 L. Ed. 739; Long v. Union Trust Co. (D. C.) 272 F. 699, 703, 704; Washington Loan & Trust Co. v. Hammond, 278 F. 569, 574, 51 App. D. C. 260; Gilpin v. Williams, 17 Ohio St. 396; Williams v. Presbyterian Society, 1 Ohio St. 478.

The Peabody Museum accepted this devise subject to this perpetual trust, but, according to the averments of the bill of complaint, it did not keep and use the land de-

---

[1] There is some confusion in the record and briefs as to whether Eri F. Jewett died before or after the death of the testatrix.

vised for the declared purposes of the trust, but on the contrary exploited it "for relics and remains possessing scientific, historic, or ethnological value or interest and caused all such remains and relics to be removed therefrom and placed in its museum at Cambridge, Mass."

[5] It is unnecessary to the disposition of this case to determine whether the Peabody Museum had or had not the right to remove these relics from the lands dedicated by this trust provision of the will to their preservation. If it had such right, then the purposes of the trust have been fully accomplished. If it had no such right, then by its own act it made the further performance of the trust impossible. In either event this land, as land, can no longer serve the purposes of the trust, and the title thereto necessarily reverts. Hopkins v. Grimshaw, supra.

[6, 7] For the same reason, it is now unnecessary to determine whether the President and Fellows of Harvard College acquired by merger with the Peabody Institute any title or interest in this land. If it did, it acquired no other or different title than the devisee took under item 4 of the will of Phebe Ferris. The partition suit in no way changed or affected this title. McBain v. McBain, 15 Ohio St. 337, 86 Am. Dec. 478; Tabler v. Wiseman, 2 Ohio St. 208, 211.

[8] It is claimed, however, on the part of the appellant, that the removal of these remains and relics to its Museum at Cambridge, Mass., was in fulfillment of the wishes of the testatrix; that the preservation of these relics and remains entail and will continue to entail expenses essential to their care, management, and exhibition; that the trust, if it be a trust, is in the nature of a public charity; and that under the cy pres doctrine the land should be ordered sold and the proceeds thereof held by it as a trust fund for the payment of these expenses. While the trust here created was for educational purposes and as such is a public charitable trust, yet there is nothing in this will to indicate that the removal of these relics was in fulfillment of the wishes of the testatrix, or to suggest that she contemplated such removal. On the contrary the plain and positive language of the devise indicates a wholly different intent and purpose, and it is the intent and purpose of the testatrix, and not the intent and purpose of the trustee or the court, that must control. Colton v. Colton, 8 S. Ct. 1164, 127 U. S. 300, 309, 32 L. Ed. 138.

[9] In the absence of ambiguity, the provision of item 4 must be interpreted as written. A court may not deprive this testatrix of her right to make a will by a construction wholly at variance with the plain import and the usual and ordinary meaning of the words used.

[10, 11] The cy pres doctrine can only be invoked in furtherance of the intent and purpose of the donor of the trust as near as may be, and not in disregard of the express terms of the grant or devise. Board of Education v. Town of Van Wert, 18 Ohio St. 221, 227, 98 Am. Dec. 114. It does not appear from the record that, through any natural or unavoidable change in conditions or circumstances, the land devised is not now as fit and suitable for the preservation of these remains and relics as it was at the time this will was written, but rather that, by reason of the action of the trustee in removing these relics, its further use for the purpose of the trust has become unnecessary and impracticable. This presents no case for the application of the cy pres doctrine. Le Clercq et al. v. Trustees of Gallipolis, 7 Ohio (pt. 1) 218; Board of Education v. Town of Van Wert, supra.

[12] Item 3 of the will is also helpful in the construction of item 4, and should be read in connection therewith. Item 3 creates a trust fund for the erection, maintenance, and endowment of a free library of reference, to be located "in my said homestead." This homestead is in close proximity to the Ancient Cemetery. From these two provisions of her will it would appear that it was the intention and purpose of the testatrix, not only to make this homestead and Ancient Cemetery an attractive resort for all persons interested in literature, archeological and ethnological studies and investigations, but also to bring these educational advantages in near proximity to her friends and neighbors. This court, however, need not inquire as to the motive that induced the testatrix to create these trusts upon the terms and conditions named. If it clearly appear that she has imposed these conditions, the sufficiency of her reasons for so doing cannot be questioned.

[13] What has heretofore been said in reference to the estate devised to the Peabody Museum in item 4 of this will has direct application to the questions presented by the cross-appeals of Charles E. Jewett and the heirs of Ida S. Mathis, respectively. Construing item 4 in accordance with the provisions of section 10580, General Code of Ohio, Phebe Ferris in this item of her will devised to the Peabody Museum all the estate in these lands she could lawfully devise, subject however to a perpetual trust. She reserved to herself no right or interest in this property

that could pass under the residuary devise and no estate of inheritance or interest therein at the time of her death that would pass by descent to her then heirs at law. At most she had a mere possibility of reverter. Adams v. Chaplin, 1 Hill, Eq. (S. C.) 265, 269; Puffer v. Clark, 168 N. W. 471, 202 Mich. 169, 199; Upington v. Corringan, 45 N. E. 359, 151 N. Y. 153, 37 L. R. A. 794; Dungan v. Kline et al., 90 N. E. 938, 81 Ohio St. 371, 385; Gilpin et al. v. Williams et al., 25 Ohio St. 283, 297, 300; In re Vine Street Congregational Church, 20 Ohio Dec. 573, 583, and cases there cited.

[14] It is claimed upon behalf of Charles E. Jewett, cross-appellee, that, notwithstanding a mere possibility of reverter cannot be alienated by deed or by will, the heirs of Phebe Ferris succeeded at her death by force of representation and not by descent; that the statutes of Ohio have no application to a noninheritable estate; that under the common-law rule, upon the termination of the interest of the devisee or grantee, the possibility of reverter runs with the blood of the grantor or testator; and that these heirs living at the time of the termination of the interest of the devisee or grantee take by representation per stirpes and not per capita.

Prior to the adoption by statute in Ohio of the common-law and general statutes of England in aid of the common law, in so far as there was no statute then in force or thereinafter enacted upon the same subject-matter, there was a statute of Ohio in reference to descent and distribution of estates of persons dying intestate. For this reason, it has been doubted whether the common law, under the provisions of the statute adopting it, ever controlled in Ohio in reference to descent of intestate property. However that may be, the statute adopting the common law was repealed on the 2d day of January, 1806, since which time it has had no force in Ohio derived from legislative adoption, but derives its authority wholly from judicial recognition in the practice and course of adjudication in Ohio courts, but, wherever the Legislature by statutory law assumed to establish either rules of property or conduct, the common law can neither add to nor take from the statutory rule. Drake et al. v. Rogers, 13 Ohio St. 21, 31; Kerwhaker v. Cleveland, C. & C. R. Co., 3 Ohio St. 172, 178, 62 Am. Dec. 246.

The courts of Ohio have adopted the principles of the common law only in so far as those principles are adapted to our circumstances, state, or society and form of government. Lessee of Lindsley v. Coats, 1 Ohio 243, 245; Carey v. Commissioners, 19 Ohio, 245, 257.

The common-law mode of computing kindred, based largely on the feudal system of tenures in England, being wholly unsuited to our form of government and our political institutions, has never been adopted by the courts as the law of this state. Clayton et al. v. Drake et al., 17 Ohio St. 368, 372. However that may be, the statutes of Ohio not only comprehend the whole subject-matter of descent and distribution of intestate estates to the exclusion of the common-law and the civil-law rules, but also provide clear and explicit rules for determining in every case the next of kin and the proportions in which they shall take. Drake et al. v. Rogers, supra; Penn v. Cox, 16 Ohio 30, 32; Ewers et al. v. Follin et al., 9 Ohio St. 327, 330, 331.

[15] The statutes of Ohio recognize the right to take by representation to the extent only that lineal heirs of a deceased heir take by representation and not as direct heirs of the intestate where the descent is arrested in an heir of equal consanguinity to the intestate as their deceased ancestor. In such case they take per stirpes and not per capita. But, where all the next of kin are of equal consanguinity they take per capita as heirs of the intestate in their own right and not by representation. Section 8581, General Code of Ohio; Parsons et al. v. Parsons et al., 40 N. E. 165, 52 Ohio St. 470.

[16] The testatrix devised all her right, title and interest in this land to the Peabody Museum, except the mere possibility of reverter. When this was enlarged into an estate of inheritance by the reversion of the title upon the determination of the trust estate, this title vested by force of the Ohio statutes of descent and distribution, and not otherwise, in her then heirs as her representatives, and not as representatives of the heirs of the testatrix living at the time of her death. It appearing that these heirs and representatives of the testatrix are all of equal consanguinity, they take under section 8581, General Code of Ohio, per capita and not per stirpes.

For the reasons stated, the decree of the District Court is affirmed.