SHOEMAKER et al. v. AMERICAN SE-
CURITY & TRUST CO. et al.

No. 9477.

United States Court of Appeals
District of Columbia.

Argued May 29, 1947.

Decided July 28, 1947.

Mr. Joseph B. Simpson, Jr., of Rockville, Md., with whom Miss Vivian V. Simpson, of Rockville, Md., and Messrs. P. Bateman Ennis, William H. Collins, Bernard Nordlinger, John Lewis Smith, John Paul Jones and Thomas B. Heffelfinger, all of Washington, D. C., were on the brief, for appellants.

Mr. G. Bowdoin Craighill, Jr., of Washington, D. C., with whom Messrs. John S. Flannery and G. Bowdoin Craighill, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and CLARK and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

Anna R. Shoemaker died May 4, 1927, leaving considerable property and a will.

By the will she bequeathed cash legacies to relatives, friends and charities and devised and bequeathed her residuary estate to a trustee, appellee here. The residue consisted principally of real estate, all of which was improved except three lots located at the corner of Wisconsin Avenue and Brandywine Street in the District of Columbia. The provisions of the will relating to the trust were contained in Item Ninth, the pertinent parts of which are as follows:

"Item Ninth: After the satisfaction of the legacies hereinbefore given and of the provisions hereinbefore made, I desire that the residue of the estate real and personal of which I shall die seised and possessed, or to which I shall be entitled at my decease, shall be used and applied in the erection of a suitable building on my lots known as Lots One (1), Twenty-seven (27) and Twenty-eight (28) in Square Seventeen hundred and thirty-two (1732) in the District of Columbia, and in furnishing and equipping the same in a proper manner to be used and occupied as a home for indigent white maiden ladies over the age of sixty (60) years, unless I shall erect such building and equip the same in my lifetime, and in providing for the perpetual upkeep of the same and in providing perpetually for the suitable care, attention, clothing and feeding of the inmates of such home, without cost or charge to them, and to this end and with this desire and purpose, I do hereby give, devise and bequeath unto the American Security and Trust Company, a body corporate, incorporated under the laws in force in the District of Columbia, as Trustee upon the trusts hereinafter set forth, if it shall accept the trusts hereby created and hereby imposed upon it and shall act as Executor under this Will, the said rest and residue of my estate, the real estate hereby devised being known and described as * * *; also all other real estate which I may now own, if any, or which I may hereafter acquire, all of which parcels of land and personal property shall be taken and held in and upon the trusts and for the uses and purposes hereinafter declared, that is to say: In Trust to take possession of said parcels of land and premises and collect the rents and profits thereof * * * [After pay-ing taxes, etc.] the residue of said rents and profits shall be used so far as and if necessary to supply any deficiency in my personal estate for the payment of the aforesaid legacies and when they are paid, the said residue of said rents shall be accumulated and applied towards the cost of the erection of the building hereinbefore mentioned, on the hereinbefore mentioned lots in Square numbered Seventeen hundred and thirty-two (1732) if I shall not have caused such building to be erected in my lifetime and if I so caused said building to be erected, the said residue of rents shall be applied towards the upkeep of the said home and the support and maintenance of its inmates. If I do not erect or cause to be erected the said building, on the said vacant lots in my lifetime, I desire and direct that my said Trustee or the Trustee acting herein shall cause to be erected on said lots a suitable building for the purposes, of the best construction, of brick or stone, of such size as to be comfortable for and to accommodate about twenty-five persons and to suitably furnish and equip the same, as soon after my decease as the same can be done, the cost thereof to be paid from any accumulated rents and from the proceeds of the sale or sales of such of my real and personal estate other than the lots in Square numbered Two hundred and fifty-three (253) as may be necessary for the purpose, which sale or sales 1 hereby authorize the trustee acting to make either at public or private sale * * * The rents and other income from the residue of the property held in trust after all necessary and usual costs and expenses shall be applied to the keeping of said building in repair and for the keeping, maintenance, care and support of the inmates of said home and for their clothing and feeding.

"The said home shall be designated, named and known as 'The Elizabeth R. Shoemaker Retreat for Friendless Maiden Ladies',—in memory of my beloved mother, and shall be non-sectarian, so that whatever may be the religion or creed of applicants for admission to said Home, their religion or creed shall constitute no obstacle to their admission to the home, but only respectable, unmarried and indigent white women over the age of sixty (60) years shall be admit-

ted, and whenever there is a vacancy in the home women of my blood or related to me by kinship shall if otherwise eligible or proper to be admitted, always have the preference in obtaining a home in such building.

\*    \*    \*    \*    \*    \*

"When the said building shall be erected and equipped as hereinbefore provided, I wish and direct that my said Trustee shall make all reasonable and necessary efforts to effectuate and facilitate the incorporation of an association, society or institution, either by special Act of Congress of the United States, or by the authority of any general law in force at the time in the District of Columbia, in order to carry into effect my hereinbefore expressed wish and directions, with respect to the foundation, maintenance and care of such home or institution, and at anytime within twenty-one years after my death, I direct my said Trustee to turn over, transfer and convey to such incorporated association, society or institution all of the lands and personal property then held by it as Trustee hereunder, and in case said home shall not be founded or built by me, or by my said Trustee, or in case it should cease to be used for the purposes herein directed, or in case for any other reason, the money, funds and land hereby given for the purpose of founding said home cannot be so applied, then and in either case, I direct that the aforesaid property shall be sold and disposed of and the proceeds divided among the then descendants of my grandfather, Samuel Shoemaker, such division to be made per stirpes and not per capita."

In 1945 the trustee filed a civil action in the District Court, seeking a construction of the will and instructions. It recited that as of May 11, 1928, the trust assets had amounted to $587,188.84; that since that date the trustee had sold only a small part of the real estate and had collected and invested the income; and that the trust assets amounted to $625,673.49 as of the date of the action. It further recited that it had not proceeded with the construction of the building described in the will, but that, relying upon an opinion of its then counsel as to its power, it had delayed the erection of the building in order to accumulate income from the trust property until the trust funds should be adequate for the construction and maintenance of the building; and that during the recent war period erection of the building had been impossible because of wartime restrictions on material and labor. It further recited that the vacant lots, designated in the will as the site for the building, had become inadequate and unsuitable for use as a Retreat of the nature described in the will. It stated that it believed that if the court should authorize a sale of the three lots and the purchase of another site, the trustee would be able to proceed with the erection of a building and that thereafter the building could be maintained as a home for a substantial number of persons, in accordance with the provisions of the will, with the assets now in the trust estate. Various descendants of Samuel Shoemaker, the deceased grandfather of Anna R. Shoemaker, were defendants in the action, some twenty being named and all others of that class being included by general designation. Certain of these defendants appeared on behalf of themselves and all others of the class, and contended that the trust had failed and that the court should declare that the property had reverted to the descendants of Samuel Shoemaker, in accordance with the reverter clause of the will.

The District Court concluded that the trust created by Item Ninth of the will was a valid charitable trust; that it had not been breached and should be preserved; that the three vacant lots had become unsuitable as a site for a Retreat of the nature designated in the will, because of material changes in the neighborhood and the noise and din arising from excessive traffic and other circumstances; that the dominant intention of the testatrix was that her residuary estate should be used to build a Retreat as a memorial to her mother; and that the designation of the vacant lots as the site for the Retreat was purely incidental to her primary purpose. The court, therefore, directed the trustee to sell the vacant lots, to purchase a new site, and to proceed with the construction and the equipment of the Retreat as soon as building conditions will permit, and thereafter to form a corporation and convey the trust property to it in the manner provided in the will.

The question presented by the appeal is whether the dominant purpose of the testatrix, in Item Ninth of the will, was to utilize a designated piece of property as a memorial to her mother, or was to provide a Retreat for indigent maiden ladies as the memorial.

The rule of law by which the answer to the foregoing question is to be reached is established beyond dispute. The will means what the testatrix intended it to mean. The rules of law which lead to a decision in the case when the answer to that question has been reached, are equally well established. If the will establishes a trust and the trust fails, a court has no power except to enforce a reversion. Whether the trust has failed or not is to be determined by the primary or dominant purpose of the testator. The trust itself does not fail if only the incidents of its description or execution fail. The doctrines of cy pres, equitable approximation and similar doctrines of general equity power are expressions of the power of the court to enforce a trust which has not failed in its dominant character but is incapable of execution in its designated manner. Those doctrines have no application if the testator's dominant purpose has become altogether impossible of achievement.[1] The presence of a reverter clause, and its phraseology, frequently furnish aid in determining the dominant or primary purpose of the testator in providing for a trust, but the mere clause itself does not affect the basic controlling principles of law.[2] It follows from the foregoing general principles that if a testator establishes a charitable trust and designates a site to be used, and if it appears that his dominant or primary intent was the use of the designated site for the described purpose, a court cannot direct the establishment of the charity at another site. Thus, for example, if a testator directs that his old home be used for a particular charitable purpose, or that his estate be used to establish a church or a school in a designated town, and it appears that his primary intent was the dedication of the home to the named purpose, or was the establishment of the church or school for the benefit of the inhabitants of the named town and none others, a court cannot direct that the charity or church or school be erected or maintained at some other place. These cases rest upon the proposition that if the primary intent of the testator was the use of a designated property or a benefit to a designated community, the trust fails if that property or the charity in the named community becomes impossible or impracticable. On the other hand, if the testator establishes a charitable trust and only incidentally designates a site, the court will effectuate the primary intent if the designated site becomes unsuitable for the purpose indicated.[3] The distinction between the two classes of cases is in the primary intent of the testator. The rule is well indicated in Brown v. Meeting Street Baptist Society[4] as follows, the statement

[1] President and Fellows of Harvard College v. Jewett, 6 Cir., 1925, 11 F.2d 119, 122; 3 Scott, Trusts §§ 399, 399.2, 401.2 (1939).

[2] Edwards v. Packard, 1930, 129 Me. 74, 80, 81, 149 A. 623, 625, 626; McCran v. Kay, 1921, 93 N.J.Eq. 352, 115 A. 649; Gilman v. Burnett, 1917, 116 Me. 382, 102 A. 108, L.R.A.1918A, 794; Bowden v. Brown, 1908, 200 Mass. 269, 86 N.E. 351, 128 Am.St.Rep. 419; Gladding v. St. Matthew's Church, 1904, 25 R.I. 628, 636 et seq., 57 A. 860, 863 et seq., 65 L.R.A. 225, 105 Am.St.Rep. 904, 1 Ann.Cas. 537; Brooks v. City of Belfast, 1897, 90 Me. 318, 38 A. 222; Teele v. Bishop of Derry, 1897, 168 Mass. 341, 47 N.E. 422, 38 L.R.A. 629, 60 Am.St. Rep. 401; In re Randall's Estate, 1941, 341 Pa. 501, 19 A.2d 272; Bancroft v. Maine State Sanatorium Ass'n, 1920, 119 Me. 56, 67 et seq., 109 A. 585, 590 et seq.; Bullard v. Town of Shirley, 1891, 153 Mass. 559, 27 N.E. 766, 12 L.R. A. 110; 3 Page, Wills §§ 1236, 1241 (3d ed. 1941); 3 Scott, Trusts §§ 399, 399.2 (1939).

[3] Noel v. Olds, 1943, 78 U.S.App.D.C. 155, 161 et seq., 138 F.2d 581, 587 et seq., certiorari denied, 1944, 321 U.S. 773, 64 S.Ct. 611, 88 L.Ed. 1067; Manufacturers Nat. Bank v. Woodward, 1944, 141 Me. 28, 38 A.2d 657; Gredig v. Sterling, 5 Cir., 1931, 47 F.2d 832, certiorari denied, 1931, 284 U.S. 629, 52 S.Ct. 13, 76 L.Ed. 535; Town of South Kingstown v. Wakefield Trust Co., 1926, 48 R.I. 27, 32, 134 A. 815, 817, 48 A.L.R. 1122; In re Young Women's Christian Ass'n of New York City, 1924, 96 N.J.Eq. 568, 126 A. 610; II Restatement, Trusts § 399 b, c, f and l (1935); 3 Scott, Trusts §§ 399.2, 399.3 (1939).

[4] 1869, 9 R.I. 177, 187.

being quoted with approval by the Supreme Court of Errors of Connecticut in First Congregational Soc. v. City of Bridgeport:[5] "Indeed, the cases seem to rest upon the idea—somewhat like that which obtains in cy-pres applications of charity estates,—that the primary purpose of the donor being the promotion of the charity, his incidental purpose that the particular property given shall be used for its promotion, may be·disregarded, and the property sold or exchanged, if thereby the charity will be greatly benefited. If this be the true view, we think we need not hesitate to give the sanction of the court to the exchange proposed; for however evident it may be that the donor designed or expected that the granted lot should be the seat of the contemplated charity, it is still more evident, from the scope and tenor of his deed, that it was the charity itself, and not the perpetual use of the lot for its advancement, which the benevolent donor had mainly at heart."

█ In the present case, it seems to us, as it did to the learned justice of the District Court, that the primary intent of this testatrix was the establishment of a Retreat for indigent maiden ladies, this charity to be a memorial to her mother. It seems to us that although she repeatedly referred to the vacant lots at Wisconsin Avenue and Brandywine Street as the site of the Retreat, that designation was incidental to her main purpose. There is nothing to indicate that she had any particular attachment to those lots; they were not her old home or in any other respect of a character from which it might be implied that she had some dominant purpose in respect to their use. It appears that these three lots were the only vacant, or unimproved, pieces of property which she owned. The designation of her only vacant property as the site of her intended charity was thus a natural incident. Able counsel for the appellants vigorously press upon us the repeated reference to the designated site throughout Item Ninth of the will. For example, she directed that the residue of the estate "shall be used and applied in the erection of a suitable building on my lots known as Lots

One (1), Twenty-seven (27) and Twenty-eight (28) in Square Seventeen hundred and thirty-two (1732)"; and again she directed that the residue of the rents "shall be accumulated and applied towards the cost of the erection of the building hereinbefore mentioned, on the hereinbefore mentioned lots in Square numbered Seventeen hundred and thirty-two (1732)"; and again, "If I do not erect or cause to be erected the said building, on the said vacant lots in my lifetime, I desire and direct that my said Trustee or the Trustee acting herein shall cause to be erected on said lots a suitable building for the purposes, * * *." On the other hand, the will describes with some particularity the nature of the charity which was sought to be established, the nature of the inmates, their care, attention, clothing and feeding, and the direction that the home be designated as "The Elizabeth R. Shoemaker Retreat for Friendless Maiden Ladies"; and the conditions of the reverter clause do not include the use of the designated site. The reverter clause is: "* * * and in case said home shall not be founded or built by me, or by my said Trustee, or in case it should cease to be used for the purposes herein directed, or in case for any other reason, the money, funds and land hereby given for the purpose of funding said home cannot be so applied, then and in either case, I direct that the aforesaid property shall be sold * * *."

The failure which is the expressed condition in the reverter clause itself is the failure of founding the home. If this were the only provision in the will to be considered, there would be no question whatever but that the founding of the home was the purpose of the testatrix. The references to a site for the home which appear elsewhere in the will do not indicate a different intent when viewed in the light of the circumstances to which we have referred and of those provisions which describe the charity to be established.

It should be noted that the trust has not yet failed, even if the dominant intent of the testatrix appeared to be the erection of the charity at the designated site. The

---

5 1923, 99 Conn. 22, 121 A. 77.

home can still be built, as a physical matter, upon the vacant lots. The trustee filed its action for the instruction of the court, in the light of the conditions which surround the designated lots at the present time. We think that the District Court correctly instructed the trustee to purchase another site and to proceed with the establishment of the charity provided by the will.

Affirmed.