## ROBERDS et al. v. MARKHAM et al.
### Civil Action No. 37478.

United States District Court
District of Columbia.
Nov. 22, 1948.

Stuart H. Robeson and James A. Willey, both of Washington, D. C., for plaintiffs.

Leon Tobriner, Joseph J. Malloy and Roger M. Stuart, Jr., all of Washington, D. C., for defendants.

HOLTZOFF, District Judge.

This is an action brought by the trustees of the Douglas Memorial Methodist Episcopal Church located in the City of Wash-

ington, for permission to sell the real property occupied by the church building. The defendants are heirs of the original grantor and claim that the trustees have no authority to sell the property, on the ground that it was conveyed to the church solely for church purposes, with a possibility of reverter to the grantor and her heirs in the event that the premises should cease to be used as a place of worship. The action is, in effect, one for a declaratory judgment to determine the nature of the title to the property. It is clearly an adversary proceeding, since the defendants are heirs of the original grantor, who claim that the property reverts to them in the event of a termination of its use for church purposes.

The essential facts are not in dispute. Sidney Virginia Douglas was a member of the congregation of the Methodist Episcopal Church, of which her son-in-law was pastor. She conveyed to the trustees of the church the property located at the corner of 11th and H Streets, Northeast, in the District of Columbia, on which the church was situated. The church then became known as the Douglas Memorial Methodist Church. The conveyance was in fee simple. It contained the following additional provisions:

"In trust that said premises shall be used, kept and maintained, as a place of divine worship for the use of the ministry and membership of the Methodist Episcopal Church in the United States of America and to be known as 'The Douglas Memorial Methodist Episcopal Church' of the City of Washington in the District of Columbia, subject to the discipline, usage and ministerial appointments of said Methodist Episcopal Church as from time to time authorized and declared by the general conference of said church and the annual conference within whose bounds the said premises are situate.

"Provided However, that when the said premises shall cease to be used, kept and maintained as aforesaid as a place of worship for the ministry and membership of the said Methodist Episcopal Church that

the same shall revert to the said party hereto of the first part, her heirs and assigns, and further that the Memorial Tablet now in said church shall be permitted to remain there or in any new church that may be erected on the site thereof."

The trustees of the church have found that the character of the neighborhood has drastically changed in the course of years. Originally it consisted mostly of dwelling houses. Today the section is largely of a commercial character. Vehicular traffic has greatly increased and has brought a great deal of noise in its wake. Many members of the congregation have moved away from the locality and have scattered among different places in the city and its environs. For these reasons, the trustees desire to sell the church property, and with the proceeds to erect another church in a more suitable section of the city. To this end, they, in effect, request an adjudication that they may convey title in fee simple free of the trust.

On its face the deed appears to create a fee simple estate subject to termination on the occurrence of a specified contingency. Qualified, determinable, or defeasible fees were known at common law and are recognized in the District of Columbia, Cowell v. Springs Co., 100 U.S. 55, 25 L.Ed. 547; D.C.Code (1940) Title 45, Section 803.[1]

The conveyance is in trust to use the premises as a place of divine worship for the use of the Methodist Episcopal Church. A gift of property in trust for religious purposes is a valid charitable trust. Thus, Restatement of the Law of Trusts, Section 371, states that "a trust for the advancement of religion is charitable." It expressly enumerates a trust to build or maintain a church building among examples of charitable trusts. In Smith v. Gardiner, 36 App.D.C. 485, it was held that a gift for the use of a specified religious organization and a gift to a specified church were valid as charitable trusts. Somewhat similar gifts have been held to be valid charitable trusts, such as a grant for the maintenance of a burial ground,

---

[1] D.C.Code 1940, Title 45, Section 803, reads as follows:
"An estate in fee simple may be either absolute or qualified, as to one and his heirs during an existing condition of things of uncertain duration."

Hopkins v. Grimshaw, 165 U.S. 342, 352, 17 S.Ct. 401, 41 L.Ed. 739; a gift for a hospital, Ould v. Washington Hospital, 95 U.S. 303, 24 L.Ed. 450; Graff v. Wallace, 59 App.D.C. 64, 32 F.2d 960; a grant for a home for indigent persons, Shoemaker v. American Security & Trust* Co., 82 U.S.App.D.C. 270, 163 F.2d 585; and a gift for building and maintaining an art museum, Noel v. Olds,¯ 78 U.S.App.D.C. 155, 158, 138 F.2d 581. Indubitably, therefore, the conveyance in the instant case created a valid charitable trust. One vital consequence of this conclusion is that the rule against perpetuities is inapplicable to an interest or estate arising after the termination of the trust.

The trust is coupled with a limitation that when the premises shall cease to be used, kept and maintained as a place of worship for the ministry and members of the Methodist Episcopal church, it shall revert to the grantor, her heirs and assigns. There is a further provision that the memorial tablet then in the church should be permitted to remain there, or in any new church that might be erected on the site thereof. A scrutiny of these two provisions inescapably leads to the conclusion that they create a possibility of reverter to the grantor and her heirs in the event that the premises shall cease to be used for the purposes of the charitable trust.

It is argued that an application of the doctrine of cy pres would make it possible for the court to authorize the trustees to sell the property and use the proceeds for building and maintaining another church in a different locality, if changes in conditions make it impracticable or undesirable to continue the maintenance of the church at its present location. The doctrine of judicial cy pres is recognized in the District of Columbia, Noel v. Olds, 78 U.S.App.D.C. 155, 160, 138 F.2d 581. The question to be determined is whether it may be properly invoked in this case.

In President and Fellows of Harvard College v. Jewett, 6 Cir., 11 F.2d 119, 122, the Court stated:

"The cy pres doctrine can only be invoked in furtherance of the intent and purpose of the donor of the trust as near as may be, and not in disregard of the express terms of the grant or devise."

In First Congregational Society v. Bridgeport, 99 Conn. 22, 121 A. 77, the court construed a conveyance in trust for a church. The deed contained a provision that if the society to which the grant was made should cease to support the exercises of religion on the property, the property should be held in trust for such inhabitants of the town as might associate together for the purpose of maintaining public worship on the property. The Court declined to permit a sale of the property and the use of the proceeds for the erection of a church elsewhere, in spite of the fact that the change of conditions made such a course desirable from the standpoint of the congregation. The court made the following observations, 99 Conn. at pages 34, 35, 37, 121 A. at page 81:

"If the grant of land be in trust for a charity, and no condition of reverter be coupled with the trust, and no provision be found in the grant forbidding it, the court may, if conditions have changed, in a suitable case order a sale of the land either under its general equity power or under the statute. * * * But, if the trust be coupled with a condition that the estate shall revert if the trust be breached, the court is without power to order a sale even though the conditions have so far changed as to make it impossible to continue to carry out the intention of the donor. * * * Even though the grant of land in trust and for a charitable purpose contained a provision of reverter if the use of the land granted was incident to the main purpose of the grantor—the establishment of the charity—the land is not of the essence of the charity, so that the court could properly order a sale if it found the land was no longer available or less available for the use for which the grantor had intended it.

* * * * * *

"No public benefit, no increased beneficence, no advantage to religious activity can justify a court in making over the wills or contracts of men in the conviction that changed conditions make this, if not necessary, at least highly desirable. These grantors have in the exercise of their right

under the law determined the conditions of their grant and provided for such a reversion as they desired. We cannot remake their grant, nor can we by a process of construction interpret it to mean something other than that intended by the grantors. The power of the court to decree a sale of property given by deed in trust for charity does not exist where the grantor has provided for the disposition of the trust estate upon the breach of the trust."

In First Universalist Society v. Boland, 155 Mass. 171, 29 N.E. 524, 15 L.R.A. 231, there was a conveyance to the plaintiff society to have and to hold so long as the real estate should be devoted to uses, interests and support of those doctrines of the Christian religion embraced in the Confession of Faith of Universalists. When the real property should be diverted from such uses, it was to be vested in certain persons named in the will. The court held that the grantor created a qualified or determinable fee simple, which came to an end when the property was no longer used for the purposes of the original trust and that the original grantor had a possibility of reverter to which the rule against perpetuities was not applicable.

Similar results were reached in Henderson v. Hunter, 59 Pa. 335, 340; and Congregational Society of Halifax v. Stark, 34 Vt. 243, 250.

In the Restatement of the Law of Trusts, Section 399.(1) the applicable principles are summarized as follows:

"If a settlor transfers land in trust to maintain a charitable institution upon the land, and at the time of the creation of the trust it is, or owing to a change of circumstances it becomes, unsuitable for the maintenance of the institution, the court may direct or permit the trustees to sell the land and devote the proceeds to the erection and maintenance of the institution on other land, even though the settlor in specific words directed that the land should not be sold and that the institution should not be maintained in any other place. * * *. The court will not, however, permit the removal of the institution if the settlor provided that the trust should continue only so long as the institution should be maintained on the land or that the trust should terminate if the institution were not maintained on the land."

It is clear that if the settlor conveys or devises property in trust for a charitable use with a limitation that if the property shall cease to be utilized for the purpose for which it is conveyed or devised, it shall revert to the grantor and his heirs, the trustee takes a determinable or defeasible fee, which is terminated whenever the application of the property to charitable uses comes to an end. The court may not permit a conveyance of the property and the use of the proceeds to purchase other property for the same purpose.

These principles are well illustrated in Shoemaker v. American Security & Trust Co., 82 U.S.App.D.C. 270, 163 F.2d 585. In that case the testatrix devised and bequeathed her residual estate to a trustee for the purpose of founding a retreat for friendless maiden ladies. The will contained a further provision to the effect that in case the home should not be built or in case it should cease to be used for the purposes therein directed, or in case for any other reason the money, funds and land thereby given for the purpose of founding said home cannot be so applied, then the property was to pass to the descendants of the grandfather of the testatrix. It will be observed that the dominant or primary purpose of the testatrix was to establish a home for enumerated purposes, rather than to devote a specific piece of property to that end. It appears that the vacant lots which the testatrix had devised for the purposes of the charitable trust became unsuitable as a site for the projected retreat. The Court held that the vacant lots might be sold and a new site purchased. The Court indicated, however, that a different consequence would have followed if the dominant purpose of the grantor of the trust were the use of the designated site for the described purpose. On this point the Court made the following observations, 82 U.S.App. D.C. at page 273, 163 F.2d at page 588:

"If the will establishes a trust and the trust fails, a court has no power except to enforce a reversion. Whether the trust has failed or not is to be determined by the primary or dominant purpose of the

42

testator. The trust itself does not fail if only the incidents of its description or execution fail. * * * It follows from the foregoing general principles that if a testator establishes a charitable trust and designates a site to be used, and if it appears that his dominant or primary intent was the use of the designated site for the described purpose, a court cannot direct the establishment of the charity at another site. * * * On the other hand, if the testator establishes a charitable trust and only incidentally designates a site, the court will effectuate the primary intent if the designated site becomes unsuitable for the purpose indicated."

In the Shoemaker case the reverter clause was not limited to the cessation of the use of the specific property for the described purpose. It was predicated on a failure to found a home, rather than on an abandonment of a specific site for the home. In the instant case the dominant purpose of the testatrix was to devote specified real estate for the purposes of the church. The selection of the site was not incidental but was the main purpose. This inference is emphasized by the provision of the will to the effect that the memorial tablet now in the church shall be permitted to remain there, or in any church that may be erected on the site thereof. The reverter clause expressly comes into operation when the specific property ceases to be used for the purposes of the trust.

 It is not without some reluctance that the Court reaches this conclusion. It is the function of the courts, however, to effectuate the intention of the grantor. The Court may not make a new will. A person may do what he will with his own. The fact that the grantor did not foresee the possibility that in the course of years a change of conditions might render it desirable to move the church to another neighborhood may be regretted, but the court is without power to enlarge the settlor's vision by hindsight and to change her original intention.

In the light of the foregoing considerations, the court concludes that if the property involved in this action ceases to be used for a Methodist church, it would revert to the heirs of the grantor,

to wit, the defendants. It follows hence that the trustees are without power to sell the property and pass good title thereto. If they should attempt to do so, the reverter would come into operation.

Judgment for the defendants. Counsel will submit proposed findings of fact and conclusions of law and a proposed form of judgment.