### WALLACE v. GRAFF et al.
#### Equity No. 43950.

United States District Court
District of Columbia.
April 29, 1952.

Alvin L. Newmyer, David G. Bress, Albert Philipson, Washington, D. C., for petitioner.

Charles M. Irelan, U. S. Atty., Ross O'-Donoghue, Joseph A. Sommer, Asst. U. S. Attys., Washington, D. C., for respondent.

MATTHEWS, District Judge.

The Percy Metzger Memorial Presbyterian Fund, a corporation, as trustee, petitions for an order determining that it is not required, annually or otherwise, to file with this Court for its approval after audit by its Auditor an account and report under Rule 22 of the Court, the pertinent portion of which reads:

"(a) A fiduciary charged with the care or administration of property, appointed by the Court or required to file bond with it for faithful discharge of his trust, or otherwise acting under the authority, supervision or direction of the Court, shall account and report as herein provided, unless said fiduciary be acting under the probate branch of the Court."

Opposing the petition is the United States and the Attorney General of the United States representing as *parens patriae* the unknown beneficiaries of the charitable trust established by the will of Percy Metzger, deceased, which was admitted to probate December 4, 1924.

The contention of the United States is that after 27 years the charitable plan of Mr. Metzger has not been executed; that it is doubtful if his precise plan can ever be carried out, and that the Court should require accounts and retain the cause for the purpose of applying the cy pres doctrine, or affording guidance and direction of the trustee in and about the administration of the trust. Further, the Government insists that relieving the trustee from further accounting would sever "the last contact between the trustee and the public."

By the will several individuals were named trustees of the trust but pursuant to the will they formed a corporation to act as trustee and that corporation is the petitioner here. The corpus of the trust amounts to a little under $100,000.

Mr. Metzger's will contemplated the establishment and maintenance of a fund "which from the increment (and not a penny from principal)" was to be used to "create, establish and maintain a Hospital for the care and succor of crippled children, and the sick and injured of persons, of the Caucasian race resident and citizens of the District of Columbia, and where unable by reason of adversity in life not occasioned by their own fault such care and succor may be had without cost. * * *"

As long ago as December 28, 1927, Judge Bailey, of this Court, held that Mr. Metzger's will created a valid charitable trust but said in part:

"If it should later appear that the income alone should not be sufficient, if accumulated for a reasonable time, to accomplish the purposes of the testator in the particular manner prescribed by him, I think that the court, upon proper proceedings, would have the power to have the same charitable purposes carried out in some more practicable manner."

On appeal Judge Bailey's decision that a valid charitable trust had been created by Mr. Metzger was upheld. Graff v. Wallace, 59 App.D.C. 64, 32 F.2d 960, 962. But the Court of Appeals was then not in accord with Judge Bailey's ideas as above expressed as at the time it regarded the cy pres doctrine as not in force in the District of Columbia, however, the appellate court later recognized that the doctrine of judicial cy pres is in force in this District. Noel v. Olds, 78 U.S.App.D.C. 155, 160, 138 F.2d 581; Shoemaker v. American Security & Trust Co., 82 U.S.App.D.C. 270, 163 F.2d 585. Despite these holdings and the fact that the purpose of the testator in the manner prescribed by the will has not been accomplished, still the trustee has made no effort to obtain a determination from the Court for carrying out the testator's purpose in some more practicable manner. In short, nothing has yet been done toward applying any funds of this estate to any charitable purpose whatever.

Moreover, a careful examination of the record in this case, as hereinafter indicated, has raised grave doubt in the mind of the Court as to whether the trustee is properly administering this trust.

From the fund which the testator designated in his will as the "Percy Metzger

Memorial Presbyterian Fund", and still held by the trustee, the testator gave certain annuities, all of the annuitants, however, being now deceased, unless D. Irving Coakley, Nellie L. Coakley and Grace Coakley may be designated as possible annuitants. As to the Coakleys the testator stated as follows:

"It is further stipulated and desired that if by the emergencies and vicissitudes of life either D. Irving Coakley, Nellie L. Coakley, or Grace Coakley their daughter be reduced in circumstances to such extent that they or either of them has not sufficient to support him or her, then an allowance shall be made out of the increment of my estate to make them comfortable in old age or disease during their natural life,[1] and decent burial afforded them, this benefit shall also be extended to Mrs. Dalton, wife of George A. Dalton, and if the increment of my estate shall not be sufficient to cover such outlays, let what there is be used to the extent of seventy-five per cent of such increment, *but it is understood and enjoined upon the trustee that there shall always remain out of the increment twenty-five per cent which said remainder or more every three months shall be added to the corpus of the estate and not taken away after such addition \* \* \*.*" (Emphasis supplied.)

The ultimate charitable intention of the testator is clear, and it is equally clear that in no event was more than seventy-five per cent of the income to be used, the remaining twenty-five per cent to be added to the corpus of the estate every three months and to remain a part thereof. No-

where, however, has the Court been able to find that the trustees or any of them in their accounts complied with the injunction of the testator regarding the twenty-five per cent provision. Indeed it is not apparent that any income has ever been applied to enlarge the trust corpus as the testator directed.

Furthermore, if the administration of this trust in the future is to be as in the past the result will be the thwarting of the charitable purpose of the testator. This is because the charitable purpose must be wholly financed from income and the officers of the corporate trustee are distributing to themselves for so-called "salaries" and "office rent" so much of the income that they are the actual beneficiaries of the trust instead of crippled children as the testator intended. In this connection a detailed examination will now be made of the last report of the Court Auditor herein.[2]

On July 13, 1951 the Auditor filed his report on the account of the trustee covering the period December 31, 1949 through December 31, 1950 which report has not yet been presented to the Court for approval as required by Federal Rule 53(e)(2), 28 U.S.C.A. According to said report the principal of the trust amounts to $97,765.45 consisting of bonds (3 items) amounting to $4,953.12; stocks (28 items) carried at $28,832.75; cash amounting to $41,391.58, and real estate of the assessed value of $22,588. The real estate consists of 1764 Willard Street, Northwest, which is rented as two apartments; 925 Massachusetts Avenue, Northwest, which is also rented; and unimproved lots carried at $671. The National Savings & Trust Company acts as agent for the trustee in

---

1. The record fails to show that the Coakleys or their daughter have attempted to invoke the quoted provisions of the testator's will concerning a possible allowance to them (such question being reserved for future determination under an order of this Court of March 7, 1928) and so it is presumed that the quoted contingencies pertaining to them have not arisen.

2. Although only the Auditor's report filed July 13, 1951 is dealt with in this opin-

ion all accounts filed by the trustees have been examined. The first account was filed March 30, 1942. Further accounts were filed on March 24, 1943, August 23, 1943, July 30, 1947 and March 24, 1949. All of these were incomplete. Further accounts were filed on December 12, 1949 and on May 1, 1950 which were revised and audited by the Court Auditor, and the Auditor's report thereon including a number of items covering salaries and rent, was approved by another Judge of this Court on July 18, 1950.

collecting the rents, makes necessary disbursements in connection with the real estate and receives for its services five per cent on the rents collected. It will thus be seen that insofar as the real estate is concerned, the trustee does little or nothing. except to handle the rents received from the National Savings & Trust Company. Almost half of the trust corpus consists of cash on deposit in building associations and these deposits likewise require little or nothing of the trustee except to receive the dividends thereon.

The income shown in said report for the year ending December 31, 1950 totals $6,943.28 consisting of the following:

| | |
|---|---|
| Interest on bonds | $ 136.24 |
| Dividends from Building Associations | 1564.34 |
| Dividends from stocks | 2231.52 |
| Rents collected by National Savings & Trust Company | 3011.18 |
| Total income for 1950 | $6943.28 |

Charged against this income were expenditures for the year 1950 of $6,139.11 as follows:

| | |
|---|---|
| Nellie Coakley, reimbursement for prorata share of apartment rent for use of space as office | $ 600.00 |
| Nellie Coakley, salary as President | 1112.70 |
| D. Irving Coakley, salary as Vice-President | 319.60 |
| Paul B. Cramer, salary as secretary | 565.80 |
| Auditor's fee | 290.00 |
| Newmyer & Bress, attorney fee | 600.00 |
| Taxes, repairs, commissions on rents | 2651.01 |
| Total disbursements for 1950 | $6139.11 |

The net income, therefore, for the year 1950 amounts to only $804.17 or less than one per cent on the principal. The said report shows that accumulated income of $4,215.31 was carried forward from a previous account which when added to the aforesaid $804.17 brings accumulated income to date of $5,019.48. The trustee took possession of the trust property in October 1925. On the basis of 25 years the total accumulated net income of $5,019.48 would average about $200 per year.

Commissions usually allowable to trustees in an estate of this type would not exceed five per cent on the annual income thereof, or $347.16 on the 1950 gross income of $6,943.28 as shown in the last account. In lieu thereof, however, there are claimed salaries hereinabove itemized totaling $1,998.10, attorney fees amounting to $600, and office rent of $600 to Nellie Coakley. On the record the propriety of these claims is not apparent. What services could the three officers of the corporate trustee be performing for such considerable amounts, considering particularly, the fact that the real estate is being handled for them by an agent, and that almost half of the estate consists of cash on deposit? And why is it necessary to maintain an office for an estate of less than $100,000 and where is such office? Are some of the corporate officers attempting to charge this trust estate with a part of their own apartment rent?

■■■ The Court is not impressed by the claim of the corporate trustee that it is not subject to the supervision of the Court in the administering of the trust or within the rule requiring accounts. The beneficiaries of the trust are primarily unknown crippled children and if the Government in their behalf has not the right to have the charitable trust properly administered then no one has. Early in its history the United States Supreme Court declared it the right as well as the duty of the sovereign, by the Courts and its public officers to have charities properly administered. Vidal v. Girard's Executors, 2 How. 127, 195, 11 L.Ed. 205; Beatty v. Kurtz, 2 Pet. 566, 584, 7 L.Ed. 521.

In Gilbert v. Beach, D.C., 42 F.Supp. 168, 170, affirmed as Beach v. Gilbert, 77 U.S.App.D.C. 117, 133 F.2d 50, Chief Judge Laws of this Court said in part with respect to supervision by the Court of charitable trusts:

"I see no reason why the chancery courts of the District of Columbia may not supervise the fiduciary which has an estate in the District of Columbia and prescribed duties with respect to

such estate; * * * Wherever there is a res in relation to a trust, the court may deal with it in the enforcement of the trust."

In view of the circumstances above set forth an order will be signed denying the petition of the trustee for exemption from Rule 22 of the Local Civil Rules, returning the report of the Auditor filed herein July 13, 1951 for further consideration by him in accordance with this opinion and directing the Auditor to file a further report, after due hearings, on the reasonableness or unreasonableness of the salaries, rent and attorney fees claimed and set forth in said report of July 13, 1951, and reporting on the question of whether the testator's direction as to the addition of at least twenty-five per cent of the income to corpus has been or is being complied with.